1   PAUL L. REIN, Esq. (SBN 43053)
    CELIA MCGUINNESS, Esq. (SBN 159420)
2   CATHERINE M. CABALO, Esq. (SBN 248198)
    LAW OFFICES OF PAUL L. REIN
3   200 Lakeside Drive, Suite A
    Oakland, CA 94612
4   Telephone:      510/832-5001
    Facsimile:      510/832-4787
5   reinlawoffice@aol.com

6   Attorneys for Plaintiff
    ABIGAYIL TAMARA
7

8                       UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF CALIFORNIA
9

10  ABIGAYIL TAMARA,                    CASE NO.  C12-01032 RMW
                                        Civil Rights
11          Plaintiff,
                                        **PLAINTIFF'S MOTION FOR A**
12                                      **PRELIMINARY INJUNCTION**
    v.
13                                      F.R.C.P. Rule 65, L.R. 65-2

14  EL CAMINO HOSPITAL; DAVID           Hearing
    DIGANT; and DOES 1-20, Inclusive,   Date:        August 2, 2013
15                                      Time:        9 a.m.
            Defendants.                 Place:       United States District Court
16                                                   280 S. First St., San Jose, CA
    _____/          Hon.         Richard M. Whyte
17

18

19          **PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**
                            [F.R.C.P. Rule 65, L.R. 65-2]
20

21

22

23

24

25

26

27

28

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                    S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1

<u>**TABLE OF CONTENTS**</u>

2

3    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4    STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5        Plaintiff Ms. Tamara. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6        Inglis, Her Service Dog. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7        Ms. Tamara's Experience at El Camino Hospital. . . . . . . . . . . . . . . . . . . . . . . . . 3

8        Impact of Not Having Inglis in the Hospital. . . . . . . . . . . . . . . . . . . . . . . . 5

9        El Camino Hospital. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

10       Ms. Tamara's Current Needs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11
     POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
12
     I.   Plaintiff Will Succeed on the Merits Because the Hospital Discriminated Against
13        Her on the Basis of Disability by Denying Entrance to Her Service Dog. . . . . . . . . . . . . . 9

14        A.   Plaintiff Is a Qualified Person with a Disability under the ADA
               and State Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
15
          B.   El Camino Hospital Discriminated Against Plaintiff by Denying
16             Her Use of Her Service Dog. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

17             1.   Federal Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18             2.   State Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

19   II.  Plaintiff Would Suffer Irreparable Harm Unless the Preliminary Injunction Issues. . . . . . . . 16

20        A.   Both the Hospital's Illegal Policy and Its Discriminatory Behavior
               Toward Ms. Tamara Would Continue if She Were Readmitted to
21             the Hospital. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

22        B.   Plaintiff Will Be Irreparably Harmed If the Hospital Continues to Deny
               Access to People with to Service Dogs. . . . . . . . . . . . . . . . . . . . . . . . 18
23

24   III. The Balance of Hardships Favors Plaintiff and the Public Interest Favors
          Granting an Injunction Because the Harm to Her of Choosing Between Health
25        and Independence Is So Great, but Defendants Would Experience No Measurable
          Harm by Following the Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
26
     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
27

28

**LAW OFFICES OF**
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                          -i-          S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1                                  TABLE OF AUTHORITIES

2    CASES

3    Federal

4    *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011)... . . . . . . . . . . . . . . . . 8

5    *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir.2009). . . . . . . . . . . 7

6    *Anderson v. United States*, 612 F.2d 1112 (9th Cir.1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7    *Arnold v. United Artists Theatre Circuit, Inc.*, 866 F.Supp. 433 (N.D. Cal. 1994). . . . . . . . . . 9

8    *Beltran v. Myers*, 677 F.2d 1317 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

9    *Branson v. West*, 1999 WL 1129598 (N.D. Ill. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

10   *Chalk v. United States Dist. Court,* 840 F.2d 701 (9th Cir.1988). . . . . . . . . . . . . . . . . . . . . . . 18

11   *Concerned Parents to Save Dreher Park Ctr. v. City of W. Palm Beach*, 846 F. Supp. 986 (S.D.
     Fla. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
12

13   *Cota v. Maxwell-Jolly*, 688 F. Supp. 2d 980 (N.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 20

14   *Crowder v. Kitigawa,* 81 F.3d 1480 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15   *Douglas v. Indep. Living Ctr. of S. California, Inc.*, 132 S. Ct. 1204 (U.S. 2012). . . . . . . . . . 20

16   *Grill v. Costco Wholesale Corp.*, 312 F.Supp.2d 1349 (W.D. Wash. 2004). . . . . . . . . . . . . . . 12

17   *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644 (9th Cir.2009). . . . . . . . . . . 20

18   *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837 (9th Cir. 2004). . . . . . . . . 12

19   *Lovell v. Chandler*, 303 F.3d 1039 (9th Cir.2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20   *Martin v. International Olympic Committee*, 740 F.2d 670 (9th Cir.1984). . . . . . . . . . . . . . . . . 8

21   *Moeller v. Taco Bell Corp.*, 2007 WL 2301778 (N.D. Cal.).. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22   *Roe v. Providence Health Sys.-Oregon*, 655 F. Supp. 2d 1164 (D. Or. 2009). . . . . . . . . . . 13, 14

23   *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415 (9th Cir.1984). . . . . . . . . . . . . . 7

24   *Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947 (E.D. Cal. 1990). . . . . 15, 16, 18, 19

25   *University of Texas v. Camenisch*, 451 U.S. 390 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

26   *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008). . . . . . . . . . . . . . . . . . . . . 7, 8, 20

27   State

28   *Munson v. Del Taco, Inc.*, 46 Cal.4th 661 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                          -ii-          S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

STATUTES, REGULATIONS AND RULES

Federal

28 C.F.R. Pt. 36, App. B. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

28 C.F.R. § 36.104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

28 C.F.R. § 36.208. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28 C.F.R. § 36.208(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

28 CFR § 36.302. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

28 C.F.R. § 36.302(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28 C.F.R. § 36.302(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28 C.F.R. § 36.302(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

28 C.F.R. § 36.302(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 C.F.R. § 36.302(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28 C.F.R. § 36.302(c)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28 C.F.R. § 36.302(c)(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 C.F.R. § 36, App. A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

42 U.S.C. § 12066(c)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

42 U.S.C. § 12101(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 12101(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 12101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 18

42 U.S.C. § 12102(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

42 U.S.C. § 12102(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

42 U.S.C. § 12181(7)(F). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

42 U.S.C. § 12182. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 12182(a)(2)(A)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

42 U.S.C. §12182(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

State

Civ.C. § 51. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Civ.C. § 51(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    - iii -          S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary  Injunction\Motion.wpd

1   Civ.C. § 51(e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2   Civ.C. § 52(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

3   Civ.C. § 54. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

4   Civ.C. § 54(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5   Civ.C. § 54.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

6   Civ.C. §  54.1(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

7   Civ.C. § 54.2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8   Civ.C. § 54.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

9   Civ.C. § 54.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

10  Gov.C. § 12926. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LAW OFFICES OF**
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -iv-   S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary  Injunction\Motion.wpd

**INTRODUCTION**

In December 2011, El Camino Hospital refused a disabled woman's request to keep her service dog with her during her hospital stay. The Hospital never met the service dog, let alone determined whether its presence created any direct threat to health or safety. For thirteen days, Abby Tamara was deprived of her independence and full mobility because of the Hospital's blanket exclusion. The exclusion was in direct violation of service dog law at the federal and state levels, as well as her treating physician's order that the dog be admitted.

After she was released from the hospital Ms. Tamara sued the Hospital to remedy the illegal policy. The ADA and state law require that hospitals admit service dogs. The ADA recognizes an exception for a dog that under individual circumstances poses "a direct threat to the health or safety of others" that cannot be mitigated by "reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services." Although the lawsuit progresses, El Camino has not changed its policy to comport with the law.

In the interim, Ms. Tamara has avoided hospitalization. However, changes in her health now require that she consider inpatient treatment. Her health is precarious and she may need hospitalization soon. As a result, Ms. Tamara has been contending both with her medical condition and with the stress and fear of being deprived of an essential accommodation for her disability. She cannot wait until this lawsuit wends to its conclusion.

Ms. Tamara requests this Court issue a preliminary injunction requiring El Camino Hospital to admit service dogs unless and until it has substantial evidence that a dog poses a "direct threat" to health and safety threat to the health or safety of others that cannot be mitigated by reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services. She has a strong likelihood of prevailing on the merits because both federal and state law have concrete requirements that service dogs be permitted in hospitals and medical facilities with very few, delineated exceptions.

The equities balance strongly in plaintiff's favor because, as things stand, she faces the double bind of risking her health or risking her independence. The Hospital will lose nothing by implementing a policy that follows the law. A preliminary injunction would serve the public's

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -1-    S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1  interest in ensuring that patients need not chose between their health and their civil rights.

2

3  **STATEMENT OF FACTS**

4  **Plaintiff Ms. Tamara**

5        Abigayil Tamara is a 70-year-old retired woman who has a masters degree in social work

6  and a second masters degree in art.  Tamara Dec. ¶¶ 1, 2.  She has a number of physical

7  disabilities.  *Id*. at  ¶ 3.  Her primary condition is a mobility disability.  She had surgery for a

8  herniated disc in 1994 and then back fusion surgery in 2009.  *Id*.  As a result she has difficulty

9  walking and maintaining her balance.  *Id*.  She has had a disabled parking placard and a disabled

10  license plate since 2007 due to her back condition.  *Id*.  She also has osteoporosis; bladder

11  problems; and granuloma annulare, a chronic, recurring, autoimmune skin condition caused by

12  an overproduction of white blood cells.  She has only one kidney. *Id*. at  ¶¶ 4-5.

13        El Camino Hospital is the hospital she uses. Id. at ¶¶ 5-6, 22.  She has been hospitalized

14  five times at El Camino.  *Id*. at ¶ 22.  Her psychiatrist and two of her medical doctors have

15  privileges there. *Id*. at ¶¶ 21-22.  She wears a bracelet that activates a small machine in her home

16  to communicate directly with El Camino Hospital, called Lifeline Service.  *Id*. at ¶ 6.  In 2007

17  she notified El Camino through the bracelet; an emergency vehicle was sent out and she was

18  hospitalized.  *Id*. ¶¶ 6, 23.

19        Ms. Tamara also has bipolar disorder.  *Id*. at ¶ 7.  "Bipolar disorder, also known as

20  manic-depressive illness, is a brain disorder that causes unusual shifts in mood, energy, activity

21  levels, and the ability to carry out day-to-day tasks." National Institute of Mental Health,

22  http://www.nimh.nih.gov/health/publications/bipolar-disorder.  She manages her illness with a

23  combination of prescription medication and therapy.  Tamara Dec. at at ¶ 7.  She has been on

24  psychiatric medications since 1983.  *Id*.  The medications cause a number of side effects.  *Id*.

25  Primarily, they affect her white blood count and compromise her immune system.  *Id*.  Ms.

26  Tamara was declared disabled due to bipolar disorder by the Social Security Administration in

27  1999.  *Id*.

28  //

**LAW OFFICES OF**
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW
-2-   S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

**Inglis, Her Service Dog**

Ms. Tamara has a service dog named Inglis. *Id*. at ¶ 8. He walks with her and she balances herself by leaning on him. *Id*. at ¶¶ 8, 10. Before Ms. Tamara got Inglis in 2010, she relied on a walker, and occasionally a cane, for mobility. *Id*. at ¶ 8. She had a heavy-duty walker, but found it very awkward to maneuver. *Id*. ¶¶ 8-9. It limited her activities and left her dependent upon others for assistance. *Id*.

Inglis enabled Ms. Tamara to become a more independent person. *Id*. at 9, 13. When she has Inglis, she does not have to use medical equipment to walk. *Id*. at 10. She is supported by holding onto the rigid handle of Inglis's harness, which provides her balance. *Id*. at 13. They walk as a team together. Id. 13, 16-17. She uses commands to instruct Inglis. *Id*. at ¶ 10. Inglis also retrieves things, carries items, opens some doors, pushes handicapped and elevator buttons, helps her take off her jacket and puts her laundry in the laundry basket. *Id*. at ¶ 11.

Inglis is not a pet, he is a working dog. *Id*. at ¶ 17. Ms. Tamara and he trained extensively when they were matched and they supplement that training daily. *Id*. at ¶¶ 12-17. Ms. Tamara takes Inglis everywhere with her. *Id*. at 16. It is important they stay together at all times because (a) he provides important services for her, and (b) it is part of the training and bonding requirement that they be together constantly. *Id*. She is the only one who feeds him, walks him and cares for him. *Id*. at ¶ 17. Between June 2010, when she met him, and December 24, 2011, no one but Ms. Tamara had ever cared for Inglis. *Id*. at ¶ 19.

**Ms. Tamara's Experience at El Camino Hospital**

In December 2011, Ms. Tamara was in pain from side effects of medication changes ordered by her psychiatrist. *Id*. at ¶ 20. She was admitted to the hospital on December 24, 2011, to re-balance her medication and manage her pain, although her mental health was stable. *Id*. The hospital chose to admit her to the psychiatric ward, but after four days she was transferred to the general ward because her condition was physical, not psychiatric. *Id*. at ¶¶ 36. Her medication was causing heart rate and white blood cell count irregularities. *Id*. The hospital also diagnosed pancreatitis. *Id*.

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW          -3-          S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1    Naturally, Ms. Tamara brought Inglis to the emergency room on the 24th.  *Id.* at ¶ 23.  No

2 one in the ER objected, but when the orderly came to escort Ms. Tamara to the psychiatric ward,

3 the orderly told her she could not take the dog.  *Id.*  This orderly was the only person from the

4 psychiatric ward who ever saw Inglis.  *Id.*  She did not ask to examine Inglis or ask what he did

5 for Ms. Tamara.  *Id.* at ¶ 23, 25.  She just said dogs were prohibited.  *Id.* at ¶ 23.  She said that

6 another dog had bitten someone once, and that was the reason for the policy.  *Id.*

7    In severe pain and needing to be hospitalized, Ms. Tamara acquiesced.  *Id.* at ¶ 24.  She

8 asked her boyfriend, Richard, to take Inglis to the car and to bring her a cane so she could walk

9 to the ward.  *Id.* at ¶ 24.  She had no idea how long she would be hospitalized.  *Id.* at ¶ 44.  She

10 had to make emergency arrangements for Inglis.  *Id.* at ¶¶ 24, 44.  She knew Richard could take

11 care of Inglis's basic physical needs, but Richard had no experience in training and managing

12 service animals.  *Id.*

13    On December 25th, Ms. Tamara's treating psychiatrist wrote an order for Inglis to be

14 admitted, but the hospital disregarded it.  *Id.* at ¶ 26.  Ms. Tamara was told that the hospital's

15 Infection Control unit had to approve the dog, but the unit was closed until December 27th

16 because of the holiday.  *Id.* at ¶ 27.

17    On the 27th, Ms. Tamara was informed that Infection Control would not approve Inglis

18 unless he was tested for MRSA.  *Id.* at ¶ 29.  Ms. Tamara arranged to have her vet to test Inglis

19 at a cost of $133.00, but the test results could not be read for 10 days.  (The test eventually came

20 back negative.)  *Id.* at 30.

21    Ms. Tamara continued advocating to have her service animal.  *Id.* at ¶ 31-35.  She sought

22 an interview with Digant Dave, the manager of the psychiatric ward.  *Id.*  at ¶ 31-32.  He

23 "forgot" to meet with her as promised on December 27th, but did meet with her on December

24 28th.  *Id.*  He told her that under no circumstances would Inglis be allowed in the hospital.  *Id.*

25 His reason, the third she had been given, was that a dog might disturb other patients.  *Id.* at ¶ 32.

26 He told her that he wanted to transfer her to another hospital.  *Id.*

27    Ms. Tamara refused; she did not want to be separated from her treating physician and she

28 rightly understood that a hospital cannot refuse service to people using service dogs.  *Id.*  She

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                     -4-   S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1   told Mr. Dave that when she was released from the hospital she would seek legal advice. *Id.* He

2   replied, "That will be a learning experience." *Id.*

3          After discharge Ms. Tamara was placed in an outpatient psychiatric aftercare program

4   with the Hospital called OATS (Older Adults Transitional Services). *Id.* at ¶ 48. She was in the

5   program approximately three months and never was she prohibited from having Inglis with her.

6   *Id.*

7

8   **Impact of Not Having Inglis in the Hospital**

9          After they denied plaintiff the right to have Inglis with her, the Hospital gave her a

10  walker for mobility and balance. *Id.* at ¶ 37. She used it for the next thirteen days. *Id.*

11  The walker limited her movement. *Id. at* ¶ 38. It was awkward to use. *Id.* She had particular

12  difficulty in the bathroom at the psychiatric ward because it was so small. She had to turn the

13  walker sideways to get in. *Id*. at ¶ 39. She could have managed more easily with Inglis. *Id.*

14  Because she felt less secure when she walked and could not carry things without difficulty, she

15  spent more time sitting or lying in bed than she would have done with Inglis. *Id.* Being ill made

16  her weaker and increased her need for Inglis's services. *Id.*

17         When she was transferred to the medical ward, plaintiff was put on intravenous

18  medication and fluids. *Id.* at ¶ 40. She found it impossible to walk with a walker and drag the

19  intravenous pole holding the fluids at the same time. If she had had Inglis she could have easily

20  handled the leash and pole with one hand and held on to his harness with the other hand.

21         In the general medical ward, she was placed in a double room in the door bed, with a

22  roommate in the window bed near the bathroom. *Id.* at ¶ 40. The room was very crowded with

23  equipment and other items. It was difficult to negotiate all these things with the walker. *Id.*

24  The walker would catch on her roommate's privacy drapery, embarrassing plaintiff about

25  disturbing the roommate's privacy. *Id.* She found it very difficult to get to the restroom. *Id.*

26         Plaintiff "gave up on everything" at that point. *Id.* She asked for a portable toilet chair

27  to use by her bed so that she would not have to negotiate the restroom, but this also was

28  awkward and it was humiliating to perform toilet functions by her bed, when anyone could walk

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -5-   S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1   in.  *Id.*  It would not have been necessary if she had had Inglis.  *Id.*

2          Using Inglis is critical to plaintiff's independence and safety.  *Id.* at ¶¶ 42, 43.  A

3   seemingly minor task like picking up a dropped object on the floor is for plaintiff a potential

4   opportunity to unbalance and fall.  *Id.*  Inglis will pick up a dropped item and hand it back to her,

5   but using a walker she cannot pick items up without risking a fall.  *Id.*  Inglis gives her flexibility,

6   confidence and freedom she could never have with a walker.  *Id.*

7

8   **El Camino Hospital**

9          Defendants have disclosed the service animal policy which they represent was in place at

10  the time of Ms. Tamara's hospitalization.  McGuinness Dec., ¶ 2  **Exhibit 1.**  Although the

11  policy states that service dogs are allowed at the hospital, it excludes all areas of the hospital

12  with "traffic control" and reserves the right to make any area "off limits . . . on a case-by-case

13  basis."  *Id.* at p. 3, protocol A.2.  It also excludes a service dog if the dog "adversely affects or

14  compromises a person's physical or emotional well being . . . (e.g., allergies of staff and/or

15  patients, interference with therapies, noise disruption, etc.)."  The policy does not require the

16  Hospital to assess the service dog itself or implement reasonable modifications of policy or

17  procedure in order to mitigate such "adverse affects".  *Id.* at p. 5 protocol C.2.c.5.

18         Despite what the Hospital told plaintiff about its policy, there is a dog present on the

19  psychiatric ward.  Tamara Dec. at  ¶ 33.  Plaintiff has seen the ward's occupational therapist,

20  Cathy, bring her dog, Douglas, to the unit a number of times.  *Id.*  Douglas freely roamed the

21  unit, without a leash or other restrictions.  *Id.*  Cathy told plaintiff that, although Douglas had

22  died, she brings her new dog to the ward, as well.  Tamara Dec. ¶¶ 33, 34.

23         Ms.  Tamara brought her lawsuit with the intent of changing El Camino's policy.  *Id.* at

24  ¶¶ 32, 51.  The parties mediated and the case has not settled.  Docket No. 14., Cert. Of ADR

25  Session.  Ms. Tamara is informed and believes that El Camino Hospital has not changed its

26  policy.  Tamara Dec. at ¶ 51.

27  //

28  //

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                    -6-   S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1   **Ms. Tamara's Current Needs**

2         Since being discharged from the Hospital in January 2012, Ms. Tamara has had good

3   physical and mental health.  *Id.* at ¶49.  Recently, however, she experienced family stress that

4   caused a flare-up in her bipolar disorder.  *Id.* at ¶50.  Ms. Tamara re-entered the OATS program

5   to manage her condition.  *Id.*  She has been in OATS since Monday, July 1, 2013.  *Id.*  The

6   knowledge that El Camino Hospital maintains its policy against service dogs is a source of great

7   stress for her.  *Id.* at  ¶¶ 51-53.  She would like the option of becoming an in-patient if necessary

8   to get her mental health back on a stable course.  *Id.* at ¶ 51.  But she is informed and believes

9   that if she entered the inpatient psychiatric unit, El Camino again would refuse to allow Inglis

10  entry.  *Id.*  Thus, she is precluded from taking advantage of the inpatient services offered by the

11  Hospital.  *Id.*  In addition, her recovery during outpatient treatment is being impaired.  *Id.* at

12  ¶¶ 51-53.  The knowledge that she cannot go inpatient is a source of great stress.  *Id.*  It makes

13  her feel trapped by her limited options.  *Id.*  Ironically, if she knew she could go back to the

14  inpatient ward with Inglis, she would feel less stress and be less likely to need inpatient

15  treatment.  *Id.*

16

17                          **POINTS AND AUTHORITIES**

18        The purpose of a preliminary injunction under Federal Rule of Civil Procedure 65 is to

19  preserve the *status quo* until a full trial on the merits can be conducted.  *Sierra On-Line, Inc. v.*

20  *Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir.1984); *University of Texas v. Camenisch*,

21  451 U.S. 390, 395, 101 S.Ct. (1981).  The decision whether to grant a motion for preliminary

22  injunction is a matter of the District Court's discretion.  *Am. Trucking Ass'ns, Inc. v. City of Los*

23  *Angeles*, 559 F.3d 1046, 1052 (9th Cir.2009).  "A plaintiff seeking a preliminary injunction must

24  establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in

25  the absence of preliminary relief, that the balance of equities tips in his favor, and that an

26  injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20,

27  129 S. Ct. 365, 374 (2008).

28        The Ninth Circuit takes a cautious approach to issuing preliminary injunctions where the

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                                    -7-   S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1   request for relief goes beyond a request to preserve the *status quo ante litem*. *Martin v.*

2   *International Olympic Committee*, 740 F.2d 670, 675 (9th Cir.1984). As a general rule,

3   mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor

4   the moving party and extreme or very serious damage will result. *Anderson v. United States*,

5   612 F.2d 1112, 1115 (9th Cir.1979). "[I]n doubtful cases, or where the injury complained of is

6   capable of compensation in damages" a mandatory injunction will not issue. *Id.* In this case,

7   plaintiff does seek an order prohibiting defendant from continuing its previous behavior, and

8   thus accepts the burden to prove that the facts and law strongly favor her; failure to grant the

9   preliminary injunction will result in serious damage to both Ms. Tamara's civil rights and her

10  health.

11          On the other hand, the hallmark of an equitable determination like a preliminary

12  injunction is flexibility in balancing these factors. *Alliance for the Wild Rockies v. Cottrell*, 632

13  F.3d 1127, 1132 (9th Cir. 2011). If one factor in favor of relief is weak, it may be balanced by

14  another, stronger factor in favor. *Id.* The Ninth, Second, and Seventh Circuits follow this

15  "sliding scale" approach to preliminary injunctions even after the Supreme Court's ruling in

16  *Winter v. Natural Res. Def. Council, Inc. Id.* at 1133. Balancing all the factors, the Court

17  should grant the preliminary injunction.

18          Plaintiff is likely to succeed on the merits because the ADA and State law provide "clear,

19  strong, consistent, enforceable standards" precluding hospitals from discriminating against

20  persons who use service dogs. 42 U.S.C. § 12101; 28 C.F.R. Pt. 36, App. B at 697. The

21  Hospital excluded plaintiff's dog without an individualized belief that its presence would pose a

22  "direct threat to safety" and without making any effort to modify its practices or policies to

23  enable her to keep the dog. 28 CFR § 36.302; 28 C.F.R. § 36, App. A ("Public accommodations

24  have the ability to determine, on a case-by-case basis, whether a particular service animal can be

25  excluded based on that particular animal's actual behavior or history--not based on fears or

26  generalizations about how an animal or breed might behave. This ability to exclude an animal

27  whose behavior or history evidences a direct threat is sufficient to protect health and safety.");

28  Many prominent hospitals, including Johns Hopkins and UCSF Medical Centers have

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -8-   S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1    established effective, lawful service dog policies.

2          Plaintiff also prevails on the equities.  Deprivation of her service animal is *per se*

3    irreparable harm.  She has been trying to avoid hospitalization because she does not want to be

4    separated from him.  If she does not enter the Hospital when medically necessary, she puts her

5    health at risk.  If she enters the Hospital, she surrenders her independence and puts her dog's

6    training at risk.  The public interest favors issuing a preliminary injunction to protect equal

7    access to medical care for people with disabilities.

8

9    **I.    Plaintiff Will Succeed on the Merits Because the Hospital Discriminated Against
        Her on the Basis of Disability by Denying Entrance to Her Service Dog.**

10

11          The evidence demonstrates a likelihood of success on the merits of plaintiff's

12   discrimination claim.  Plaintiff has raised claims under Title III of the Americans with

13   Disabilities Act, the Unruh Act and the California Disabled Persons Act (CDPA).  Docket No.

14   23, First Amended Complaint.  The elements of these claims are all very similar.  The ADA was

15   enacted by Congress in 1990 "to provide a clear and comprehensive national mandate for the

16   elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

17   Congress found that "individuals with disabilities continually encounter various forms of

18   discrimination, including outright intentional exclusion, the discriminatory effects of

19   architectural, transportation, and communication barriers, overprotective rules and policies,

20   [and] failure to make modifications to existing facilities and practices . . .." 42 U.S.C.

21   § 12101(a)(5).  Therefore Title III of the ADA provides, "No individual shall be discriminated

22   against on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

23   privileges, advantages, or accommodations of any place of public accommodation by any person

24   who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.

25   § 12182.  The Unruh Act and CDPA offer similar protections under State law.  Cal. Civ.C.

26   §§ 51, 54; *Moeller v. Taco Bell Corp.*, 2007 WL 2301778 at *5 (N.D. Cal.) (Jenkins, J.), citing

27   *Arnold v. United Artists Theatre Circuit, Inc.*, 866 F.Supp. 433, 439 (N.D. Cal. 1994).

28          In order to prevail on an ADA claim, plaintiff must show (1) that she is a "qualified

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -9-    S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1  individual with a disability"; (2) that she was either excluded from participation in or denied the

2  benefits of some public entity's services, programs, or activities or was otherwise discriminated

3  against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of her

4  disability. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir.2002).  Therefore, to prevail in this

5  motion for a preliminary injunction, plaintiff is prepared to show she has a strong likelihood of

6  success on each of those three elements.

7

8      A.      **Plaintiff Is a Qualified Person with a Disability under the ADA and State**
               **Law.**

9

10          Plaintiff is a person with a disability under federal and state law.  The ADA defines

11  disability to include "a physical or mental impairment that substantially limits one or more

12  major life activities." 42 U.S.C. § 12102(1).  "[M]ajor life activities include . . . walking,

13  standing, lifting, bending . . ." 42 U.S.C. § 12102(2)(A).  Similarly, state law defines disability

14  to include "any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical

15  loss  that does both of the following:

16          (A) Affects one or more of the following body systems: neurological,
            immunological, musculoskeletal, special sense organs, respiratory, including
17          speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and
            lymphatic, skin, and endocrine.

18          (B) Limits a major life activity.

19

20  Gov.C. § 12926; Civ.C. §§ 51(e)(1), 54(b)(1).

21          Ms. Tamara has a number of disabilities that affect her life activities.  She has mobility

22  and balance limitations, osteoporosis, and a number of other physical ailments, as well as

23  bipolar disorder that prevents her from working.  Tamara Dec. ¶¶ 3-8.  She was declared

24  disabled by the Social Security Administration in 1999, and has had a disabled parking placard

25  and a disabled license plate since 2007.  Tamara Dec. ¶¶ 3-8.  She meets both federal and state

26  definitions of physical disability.

27  //

28  //

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                      -10-S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

**B.**   **El Camino Hospital Discriminated Against Plaintiff by Denying Her Use of Her Service Dog.**

Defendant El Camino Hospital admits that it is a medical facility "maintained and operated as a 'business establishment' and 'public accommodation or facility' subject to the requirements of California Civil Code §§ 51, 52, 54.1 and 54.2 et seq." Answer to First Amended Complaint, Docket No. 25 ¶ 7.  Hospitals are public accommodations by definition under the ADA. 42 U.S.C. § 12181(7)(f).  By its blanket exclusion of Ms. Tamara's service dog, the Hospital discriminated against her due to her disability.

**1.**   **Federal Law**

The ADA requires hospitals and other health care providers to make "reasonable modifications in policies, practices, or procedures" as necessary to provide disabled people with access to services and facilities. 42 U.S.C. § 12182(a)(2)(A)(ii).  The Department of Justice (DOJ) has issued regulations stating that, "[g]enerally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1).  Permitting a disabled person to use a service animal is *per se* a reasonable modification.  28 CFR § 36.302(c)(1) (2010).  The regulations also require that medical patients be treated in integrated settings. *Id.* at § 6.203.  They prohibit "utiliz[ing] standards or criteria or methods of administration that have the effect of discriminating on the basis of disability, or that perpetuate the discrimination of others who are subject to common administrative control." *Id.* at § 6.204.

Service animals are permitted to go anywhere a patient goes. *Id.* at  § 36.302(c)(7).  A service animal is defined as "any guide dog, signal dog, or other animal individually trained to do work or perform tasks for the benefit of a [disabled] individual." *Id* at § 36.104.  The regulations recognize only two absolute exceptions:  If the animal is out of control and the animal's handler does not take effective action to control it, or the animal is not housebroken. 28 C.F.R. § 36.302(c).

Under very limited circumstances, a hospital may exclude a service animal if it can

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -11-S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1   demonstrate that admitting the animal would "fundamentally alter" the nature of the facility or

2   the services it provides, 42 U.S.C. § 12182(b)(2)(A)(ii), or that the animal poses a "direct threat"

3   to the health or safety of others.  28 C.F.R. § 36.208(b); *see also*  42 U.S.C. § 12182(b)(3).

4   These exceptions are intended to be invoked rarely.  "[I]t is intended that the broadest feasible

5   access be provided to service animals in all places of accommodation, including . . . hospitals . .

6   .."  28 C.F.R. Pt. 36, App. B (citing Education and Labor report at 106, Judiciary report at 59).

7   The courts and government agencies have reiterated that exclusion of service animals

8   should rarely occur, and that the burden is on the hospital to justify an exclusion.  The

9   determination whether a public accommodation is justified in excluding a service dog is an

10  "intensively fact-based inquiry."  *Lentini v. California Center for the Arts, Escondido,* 370 F.3d

11  837, 844 (9th Cir. 2004) (performing arts center erred in excluding animal that "yipped" during

12  intermission to alert its owner to potential danger).  Mere speculation of a disturbance or

13  alteration in service is insufficient; there must be substantial underlying evidence.  *Crowder v.*

14  *Kitigawa,* 81 F.3d 1480, 1485-1486 (9th Cir. 1996) (without reasonable modification, Hawai'i

15  policy quarantining all dogs upon entry to state  discriminated against service dog users in

16  violation of ADA); *see also* "Required Accommodations for Disabled Individuals' Service

17  Animals in Dialysis Facilities," Dept. Health & Human Svcs Ofc. of the Gen'l Counsel, July 12,

18  2010 at 6 ("In sum, it is very difficult to exclude a service animal from a hospital or health care

19  setting because the ADA is construed very broadly and with great deference to disabled

20  individuals").  McGuinness Dec., Exhibit 8,

21  http://www.network13.org/FRM/Section_02/F_Service_Animals_in_HC_Facilities/2F1_Service

22  _Animals_Reference.pdf.[1]

23  The "direct threat" exception is likewise narrowly construed.  A "direct threat to the

24

25      [1]    Courts may rely upon publications by federal government agencies for guidance in
26  determining rights and duties under federal law.  Such publications are owed deference.  *Grill v.*
    *Costco Wholesale Corp.*, 312 F.Supp.2d 1349 (W.D. Wash. 2004) (relying on the "DOJ Business
27  Brief" and "DOJ Guidance").  *See also* 42 U.S.C. § 12066(c)(3) requiring federal agencies
    responsible for implementing and overseeing the ADA to make available technical assistance
28  manuals and other educational materials clarifying rights and duties under the Act.

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -12-S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1    health and safety of others" means "a significant risk to the health or safety of others that cannot

2    be eliminated by a modification of policies, practices or procedures." 42 U.S.C. §12182(b)(3);

3    28 CFR § 36.104.  A hospital concerned that a service dog may pose a direct threat to safety:

4           must make an individualized assessment, based on reasonable judgment that
            relies on current medical knowledge or on the best available objective evidence,
5           to ascertain: The nature, duration, and severity of the risk; the probability that the
            potential injury will actually occur; and whether reasonable modifications of
6           policies, practices, or procedures or the provision of auxiliary aids or services
            will mitigate the risk.

7

8    28 C.F.R. § 36.208(b); *Roe v. Providence Health Sys.-Oregon*, 655 F. Supp. 2d 1164, 1168 (D.

9    Or. 2009).  An Illinois District Court found that exclusion must be supported by a qualified

10   medical professional's opinion that the animal presented a direct threat to health and safety at

11   the hospital that a human being would not.  *Branson v. West*, 1999 WL 1129598 (N.D. Ill.

12   1999), amended mem. op. and order, 1999 WL 1186420 *13 (N.D. Ill. 1999) (issuing permanent

13   injunction requiring Veteran's Administration to permit VA doctor to use her service dog at the

14   hospital); *See also Roe, supra*, 655 F.Supp.2d at 1167 (relying on doctor's concern for

15   infection); Guidelines for Environmental Infection Control in Health-Care Facilities, US Dept of

16   Health and Human Svcs, Center for Disease Control 2003 at 109 (stating factors health care

17   personnel should consider in evaluating "direct threat").  McGuinness Dec. Exhibit 7.

18          The DOJ's comments to the regulations made it plain that "direct threat to health or

19   safety" in hospitals means severe health impacts, such as infection, not remediable

20   inconveniences such as allergic or fearful staff and patients.

21          The Department notes that under the final rule, a healthcare
            facility must also permit a person with a disability to be
22          accompanied by a service animal in all areas of the facility in
            which that person would otherwise be allowed. There are some
23          exceptions, however. The Department follows the guidance of the
            Centers for Disease Control and Prevention (CDC) on the use of
24          service animals in a hospital setting. Zoonotic diseases can be
            transmitted to humans through bites, scratches, direct contact,
25          arthropod vectors, or aerosols.

26          Consistent with CDC guidance, it is generally appropriate to
            exclude a service animal from limited-access areas that employ
27          general infection-control measures, such as operating rooms and
            burn units. See Centers for Disease Control and Prevention,
28          Guidelines for Environmental Infection Control in Health–Care

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                        -13-   S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1   Facilities: Recommendations of CDC and the Healthcare Infection
2   Control Practices Advisory Committee (June 2003), available at
    http://www.cdc.gov/hicpac/pdf/guidelines/eic_in_HCF_03.pdf
3   (last visited June 24, 2010). A service animal may accompany its
    handler to such areas as admissions and discharge offices, the
4   emergency room, inpatient and outpatient rooms, examining and
    diagnostic rooms, clinics, rehabilitation therapy areas, the cafeteria
5   and vending areas, the pharmacy, restrooms, and all other areas of
    the facility where healthcare personnel, patients, and visitors are
6   permitted without taking added precautions."

7   28 C.F.R. Pt. 36, App. A subpt. C.  "Allergies and fear of dogs are not valid reasons for denying

8   access or refusing service to people using service animals." 2011 DOJ technical assistance

9   publication, "ADA Revised Requirements: Service Animals," at p. 2.  Concerns such as allergic

10  reactions and fear can be addressed by, for example, shutting room doors, using hepa filters, or

11  reassigning staff.  *See, e.g.,* "Required Accommodations for Disabled Individuals' Service

12  Animals in Dialysis Facilities," *supra,* Dept. Health & Human Svcs Ofc. of the Gen'l Counsel,

13  July 12, 2010 at 6; *Roe v. Providence Health Sys.-Oregon*, 655 F. Supp. 2d 1164, 1166 (D. Or.

14  2009).

15

16          **2.      State Law**

17          The California Disabled Persons Act (CDPA) mandates that "physically disabled

18  persons shall be entitled to full and equal access, as other members of the general public ... to

19  places to which the general public is invited." *See also* Civ.C. § 54.  Similarly, the Unruh Civil

20  Rights Act states, "[a]ll persons within the jurisdiction of this state are free and equal, and no

21  matter what their . . . disability . . . are entitled to the full and equal accommodations,

22  advantages, facilities, privileges, or services in all business establishments of every kind

23  whatsoever."  Civ.C. § 51(b).  The California Supreme Court has observed that "[t]he Unruh

24  Civil Rights Act and the Disabled Persons Act clearly have significant areas of overlapping

25  application, although the Unruh Civil Rights Act, of course, applies to many more types of

26  discrimination, while the Disabled Persons Act contains unique specific provisions regarding

27  guide, service, and signal dogs (§ 54.2) and may apply to more public places, facilities, and

28  services than the Unruh Civil Rights Act."  *Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 675

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -14-   S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1   (2009) (citations omitted).

2       Specifically, the CDPA requires that "[e]very ... physically handicapped person shall

3   have the right to be accompanied by a guide dog, signal dog, or service dog, especially trained

4   for that purpose, in any of the places specified in Section 54.1."  Civ.C. §54.2(a) (emphasis

5   added).  Section 54.1 specifically names "hospitals, clinics, and physicians' offices."  Civ.C.

6   § 54.1(a)(1).  The CDPA imposes liability upon anyone who

7           denies or interferes with admittance to or enjoyment of the public facilities as
            specified in Sections 54 and 54.1 or otherwise interferes with the rights of an
8           individual with a disability under Sections 54, 54.1 and 54.2 . . . "Interfere", for
            purposes of this section, includes, but is not limited to, preventing or causing the
9           prevention of a guide dog, signal dog, or service dog from carrying out its
            functions in assisting a disabled person.

10

11   Cal. Civ. Code § 54.3; *see also* Civ.C. § 52(a) (Unruh similar).

12       Unlike the ADA, California law admits of no statutory exceptions for safety threats in a

13   hospital.  The only limitations which may be imposed on California's broad right of service dog

14   access are "those established by law, or state or federal regulation, and applicable alike to all

15   persons."  Cal.Civ.Code § 54.1(a).

16           The mandatory language employed indicates a clear legislative purpose to ensure
             that persons such as plaintiff shall not be denied access to public facilities while
17           accompanied by their service dogs. Through these provisions, the California
             Legislature has determined that in the absence of legal authority to the contrary,
18           there are no circumstances in which it would be reasonable to exclude a service
             dog from a public facility.
19

20   *Sullivan v. Vallejo City Unified Sch. Dist*., 731 F. Supp. 947, 959 (E.D. Cal. 1990) (service dog

21   may not be excluded from public school); *see also* Civ.C. § 54.7.

22       *Sullivan v. Vallejo City Unified Sch. Dist*  granted a preliminary injunction requiring a

23   public school district to admit a student's service dog without exception.  *Id.* at 962.  The court

24   found:

25           Plaintiff uses the service dog to overcome the physical limitations resulting from
             her cerebral palsy. The service dog is specially trained to assist plaintiff in
26           achieving greater physical independence. The evidence shows that the dog
             received two years of training from Canine Companions before being matched
27           with plaintiff and performs tasks that she cannot perform herself. [citations to
             record omitted]. It is therefore clear that plaintiff has a near absolute right under
28           state law to be accompanied by her service dog at school.

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                    -15-S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1  *Id.* at 959.

2       The Court specifically rejected the defendant School District's concern for the health of

3  others. "Defendants' decision to exclude the service dog from their premises is predicated on

4  asserted space and health concerns, as well as their own views about plaintiff's social and

5  emotional development. [citation to record omitted]. The California Legislature, however, has

6  determined that concerns of this character may not override the right of a disabled person who

7  uses a service dog to have full and equal access to public facilities accompanied by his or her

8  dog." *Id.* at 960. However, the court also noted,

9        Although the state law guarantee of equal protection prevents defendants from
         excluding the service dog from their premises, the space and health concerns
10       which defendants contend motivated their initial decision remain relevant in
         determining the appropriate manner of incorporating the service dog into the
11       school environment. Although I have held that plaintiff is entitled to be
         accompanied by her service dog at school, it would be entirely reasonable for
12       defendants to take steps to ensure that plaintiff's choice is accommodated in a
         manner that does not injure the legitimate and legally protectable rights of others.
13

14  *Id.* at 961. Specifically, the court authorized defendants to adapt its policies to account for her

15  teacher, who herself was "severely allergic to animal dander." *Id.* at 961 n. 12.

16  At the same time, the court noted that plaintiff was entitled to the least restrictive

17  accommodation possible. *Id.*; *see also* 28 CFR § 36.302. "Accordingly, defendants may not

18  alter plaintiff's placement to accommodate the purely personal feelings of others." *Id.* Thus,

19  under California law, defendant must accommodate plaintiff's right to a service animal, but may

20  do so in a way that takes into account "legitimate and legally protectable" health concerns of

21  others, not speculative concerns or personal fears.

22

23  **II.   Plaintiff Would Suffer Irreparable Harm Unless the Preliminary Injunction Issues.**

24       **A.   Both the Hospital's Illegal Policy and Its Discriminatory Behavior Toward
              Ms. Tamara Would Continue if She Were Readmitted to the Hospital.**
25

26       There is imminent danger of future harm if Ms. Tamara returns to the Hospital. The

27  Hospital admits it denied her use of her service dog when she entered the Hospital. Docket No.

28  25, Answer to FAC at 2:23-24. Over time, the Hospital gave Ms. Tamara three different

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -16-S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1   excuses for excluding her dog: (1) There was a blanket prohibition due to another animal biting

2   in the past; (2) her dog did not meet infection control requirements; and (3) there was a blanket

3   prohibition due to unspecified potential patient fears.  Tamara Dec at ¶¶ 23, 27, 32.   No one at

4   El Camino made an individualized assessment of Ms. Tamara's dog.  *Id.* at 25.  Apparently, the

5   Hospital assumed that the dog's presence might become a problem and so excluded it.  *See Id.* at

6   ¶¶ 23, 29, 32.  Hospital staff tried to transfer the problem away by suggesting she go to another

7   hospital, in violation of their obligation to treat her.  *Id.* at 32; Answer to FAC at ¶ 14; 28 C.F.R.

8   § 36.302(b)(2).

9        In addition the Hospital violated the ADA and California law by requiring Ms. Tamara to

10   provide proof that Inglis did not have MRSA.  Tamara Dec. at ¶ 29.  The Hospital placed the

11   burden on Ms. Tamara to show her dog could be admitted.  By law, the burden is on them to

12   demonstrate it must be excluded.  28 C.F.R. §§ 36.208, 36.302(a), (c).

13        On information and belief, this discrimination against Ms. Tamara would continue if she

14   were readmitted to the Hospital.  Tamara Dec at ¶ 51.  On information and belief,  the Hospital

15   has not changed its policy.  *Id.;* McGuinness Dec at ¶ 2.  Some parts of the policy reflect the

16   law; others are erroneous.  In fact, the Hospital violated its own policy by excluding Inglis

17   without "medical justification" that he actually caused a problem.  McGuinness Dec. Ex. 2, at

18   III(c)(3), (5).   Although the Hospital policy implies that an individualized inquiry is required, it

19   does not limit exclusion of service dogs to animals presenting a direct safety threat that cannot

20   be mitigated, as the law requires. *See* 28 C.F.R. § 36.208; 28 C.F.R. § 36.104.  Instead, it allows

21   the Hospital to exclude a service dog it believes "adversely affects or compromises" "well-

22   being" rather than a direct threat to safety.  McGuinness Dec. Exh. 2 at III (C)(2)(c)(5).

23   Furthermore, the policy does not require the Hospital to make any modifications in its policy,

24   practices and procedures in order to ameliorate the impact of a service dog.[2]

25

26

27        [2]      The policy is inadequate in other respects, e.g., requiring animals to be leashed in
     certain areas and making all "traffic control" areas off-limits without regard to whether infection
28   control measures are in place.  McGuinness Dec., Exh. 1 at III(C)(2)(a)(1), (3); III(A)(2); *cf.* 28
     CFR § 36.302(c)(2) and (4).

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -17-  S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary  Injunction\Motion.wpd

**B.   Plaintiff Will Be Irreparably Harmed If the Hospital Continues to Deny Access to People with to Service Dogs.**

The goals of the ADA include assuring that individuals with disabilities enjoy "equality of opportunity, full participation, independent living, and economic self-sufficiency." 42 U.S.C. § 12101.  Injuries to individual dignity and deprivations of civil rights constitute irreparable injury.  *See Chalk v. United States Dist. Court,* 840 F.2d 701, 710 (9th Cir.1988); *Sullivan v. Vallejo City Unified School Dist.,* 731 F.Supp. 947, 961 (E.D. Cal.1990) (injury to ability to function as independent person constitutes irreparable injury).  Therefore, the impending violation of the ADA and State law in this case constitutes irreparable injury.

*Sullivan* found that exclusion of a service dog was irreparable injury akin to exclusion of the person herself.

> In the matter at bar, plaintiff has chosen to use a service dog to increase her physical independence and to decrease her need to rely on others to perform tasks that are beyond her own physical capacity. The choice to employ a service dog for these purposes is akin to choosing to use a wheelchair to increase her mobility rather than a pair of crutches. By excluding her service dog, defendants have asked plaintiff to assume a different persona while she attends school, i.e., the persona of a disabled person without a service dog. In this basic sense, the effect of defendants' decision to deny entrance to the service dog is to exclude the person who exists everywhere but in school, i.e., a disabled person with a service dog, from participation in the educational program as well.

*Sullivan, supra*, 731 F. Supp. at 958.  It also noted the practical injury to the plaintiff:   "As [plaintiff] has eloquently described in her affidavit, to live a life dependent on others to perform simple physical tasks is painful and difficult. By using a service dog who she controls to perform these tasks, plaintiff is able to exercise greater control over her environment and achieve greater independence in all aspects of her life. By denying access to plaintiff's service dog, defendants have greatly diminished the dog's usefulness to plaintiff and, thereby, have deprived her of her independence." *Id.* at 960.

The *Sullivan* court found that the harmed caused by deprivation of a service dog justified a preliminary injunction:

> [Plaintiff] will likely suffer grave and irreparable injury if a preliminary injunction does not issue. . . . As a consequence of defendants' conduct, plaintiff's ability to function as an independent person, according to her own

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

1   self-definition, both in and out of school is injured daily. Neither an award of
    damages nor a permanent injunction following the conclusion of this litigation
2   could possibly restore to plaintiff the loss of independence she is likely to suffer
    in the interim as a result of defendants' conduct.
3
*Sullivan, supra,* 731 F. Supp. at 961.  Similarly, the *Branson* court found that a hospital caused
4
irreparable harm by prohibiting a doctor from using her service animal at work, justifying a
5
permanent injunction:
6
7       Dr. Branson's separation from her service dog during her working hours causes
        her emotional and psychological harm because she is denied the ability to
        confront her disability in the manner of her choosing.  De. Branson's separation
8       from her service dog during her working hours also impairs her ability to function
        as an fully independent person with self-respect and dignity. Monetary damages
9       are a seriously deficient remedy for the daily psychological harm caused by Dr.
        Branson's separation from her service dog. Lastly, the skills of Dr. Branson's
10      service dog are eroded by their inability to work together during the most active
        part of Dr. Branson's work day, and monetary damages can not restore and
11      improve Nolan's skills and his working relationship with Dr. Branson.
12  *Branson, supra,* 1999 WL 1129598 at *12.
13          The injury to Ms. Tamara is similarly grave and irreparable.  She will be deprived of
14  Inglis and therefore limited in her mobility.  Tamara Dec at ¶¶ 8-9.  In addition, she will lose the
15  effort she has put into training and bonding with Inglis.  *Id.* at ¶¶ 16-17.  Inglis's value as a
16  service animal is put at risk if he does not receive his daily training.  *Id* at ¶¶ 45-46.  In addition
17  to loss of her relationship with Inglis (*Id.* at ¶¶ 16-17) and loss of her independence (*Id.* at ¶¶ 8-
18  9), Ms. Tamara testifies that the Hospital's policy puts her mental health at risk.  *Id.* at ¶¶ 46, 50-
19  53.  Each day she is excluded from inpatient treatment is a day that she does not have the
20  opportunity for inpatient medical treatment.  *Id.*  Additionally, the stress of knowing that, should
21  she need to go in, she will lose Inglis is its own, ongoing harm.  *Id.*
22
23  **III.    The Balance of Hardships Favors Plaintiff and the Public Interest Favors Granting
             an Injunction Because the Harm to Plaintiff of Choosing Between Health and
24           Independence Is So Great, but Defendants Would Experience No Measurable
             Harm by Following the Law.**
25
26          To determine the balance of equities in a preliminary injunction request, courts "must
27  balance the competing claims of injury and must consider the effect on each party of the
28  granting or withholding of the requested relief," including "the public consequences" of issuing

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -19-  S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1   an injunction.  *Winter, supra*, 555 U.S. at 24, internal quotations omitted.  The final two

2   considerations on a motion for preliminary injunction, i.e., the balance of hardships and the

3   public interest, may be considered contemporaneously.  *See Indep. Living Ctr. of S. Cal., Inc. v.*

4   *Maxwell-Jolly*, 572 F.3d 644, 657-58 (9th Cir.2009).

5          The balance of hardships between the parties tips sharply in favor of plaintiff.  As it

6   stands, plaintiff must choose between her health and her independence, an untenable choice.  If

7   she does not go to the hospital when necessary, she risks her health; if she goes in, she risks her

8   relationship with her service dog and her independence.  Defendants risk only administrative

9   inconvenience.  When a defendant is being asked to follow the law, it cannot claim hardship.

10         It should not be a hardship for El Camino Hospital to do what other hospitals have

11  already done.  Many hospitals, including Johns Hopkins (Baltimore, Maryland), Boston Medical

12  Center (Boston, Massachusetts), UCSF Medical Center (San Francisco, California), St. Edward

13  Mercy Hospital, (Fort Smith, Arkansas), and Linden Oaks Psychiatric Hospital at Edward

14  Hospital (Naperville, Illinois) have implemented lawful service dog policies.  McGuinness Dec,

15  Exh. 2-6.

16         The public interest in equal access for disabled people is well established.  "The equality

17  of all persons is the underlying principle of the ADA, and one which the public has a strong

18  interest in promoting."  *Concerned Parents to Save Dreher Park Ctr. v. City of W. Palm Beach*,

19  846 F. Supp. 986, 993 (S.D. Fla. 1994); 42 U.S.C. § 12101(a), (b).  Specifically, there is a

20  "robust public interest in safeguarding access to healthcare . . . ."  *Indep. Living Ctr. of S.*

21  *California, Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009) (upholding injunction

22  prohibiting MediCal reimbursement cuts), vacated on other grds and remanded sub nom.

23  *Douglas v. Indep. Living Ctr. of S. California, Inc.*, 132 S. Ct. 1204 (U.S. 2012); *Cota v.*

24  *Maxwell-Jolly*, 688 F. Supp. 2d 980, 999 (N.D. Cal. 2010) (holding balance of hardships and

25  public interest justified preliminary injunction enjoining defendant State of California from

26  cutting health care services);  *Beltran v. Myers*, 677 F.2d 1317, 1322 (9th Cir. 1982) (denial of

27  medical services was irreparable injury).  Denial of medical services to people with service dogs

28  is contrary to the public interest, justifying a preliminary injunction.

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                                                                  -20-  S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd

1

**CONCLUSION**

2          For the foregoing reasons, plaintiff respectfully requests the Court issue a preliminary

3    injunction ordering defendants to allow service animals in the Hospital, in compliance with state

4    and federal law.

5

6    Dated: July 12, 2013                              Respectfully submitted,

7                                                      LAW OFFICES OF PAUL L. REIN

8

9                                                      _____/s/ Celia McGuinness_____
                                                       By CELIA McGUINNESS
10                                                     Attorneys for Plaintiff
                                                       ABIGAYIL TAMARA
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                      -21- S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Motion.wpd