PAUL L. REIN, Esq. (SBN 43053)
CELIA MCGUINNESS, Esq. (SBN 159420)
CATHERINE M. CABALO, Esq. (SBN 248198)
LAW OFFICES OF PAUL L. REIN
200 Lakeside Drive, Suite A
Oakland, CA 94612
Telephone:      510/832-5001
Facsimile:      510/832-4787
reinlawoffice@aol.com

Attorneys for Plaintiff
ABIGAYIL TAMARA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ABIGAYIL TAMARA,

       Plaintiff,

v.

EL CAMINO HOSPITAL; DAVID
DIGANT; and DOES 1-20, Inclusive,

       Defendants.
_____/

CASE NO.  C12-01032 RMW
Civil Rights

**PLAINTIFF'S REPLY ON MOTION FOR A
PRELIMINARY INJUNCTION**

F.R.C.P. Rule 65, L.R. 65-2

Hearing
Date:        August 2, 2013
Time:        9 a.m.
Place:       United States District Court
             280 S. First St., San Jose, CA
Hon.         Ronald M. Whyte

PLAINTIFF'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW

S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

## TABLE OF CONTENTS

I. The Court Should Grant an Injunction Because Despite Defendant's Opposition the Facts and the Law Strongly Favor Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Plaintiff Will Succeed on the Merits Because the Hospital Admits That it Has a Blanket Exclusion for Service Dogs in the Psychiatric Ward and Does Not Deny it Excluded Inglis Without Making an Individualized Evaluation. . . . . . . . . . . . . . . . . . . . . 2

    A. Both the Old and New Service Dog Policies Discriminate Against Disabled People Who Use Service Dogs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B. Defendant Has Not Met its Burden to Justify its Blanket Exclusion. . . . . . . . . . . . . 3

    C. Courts Do Not Defer to A Medical Care Provider's Opinion in the Absence of Data. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    D. Defendant's "Alternate Measures" for Accommodating Plaintiff Are Neither Legal Nor Effective. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. The Injunction Should Be Granted Because Defendant's Policy Causes Imminent Harm to Plaintiff and Violates Public Policy Favoring Equal Treatment for Disabled People in Hospitals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A. Defendant's Policy Causes Plaintiff Imminent Harm. . . . . . . . . . . . . . . . . . . . . . . 10

    B. The Balance of Hardships and Public Policy both Favor Plaintiff. . . . . . . . . . . . . 11

IV. The Court Should Craft An Order That Ensures Defendants Follow The DOJ Regulations Regarding Service Dogs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW
-i-
S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

**TABLE OF AUTHORITIES**

CASES -

<u>Federal</u>

*Bragdon v. Abbott*, 524 U.S. 624 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

*Chalk v. United States Dist. Court,* 840 F.2d 701 (9th Cir.1988). . . . . . . . . . . . . . . . . . . . 11

*Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . 1, 3, 5, 9, 12

*Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . 1

*Indep. Living Ctr. of S. California, Inc. v. Maxwell-Jolly*, 572 F.3d 644 (9th Cir. 2009) . . . . . 12

*Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837 (9th Cir. 2004). . . . . . . . . . . 4

*Roe v. Providence Health Sys.-Oregon*, 655 F. Supp. 2d 1164 (D. Or. 2009). . . . . . . . . . . . . 10

*Senate of Cal. v. Mossbacher*, 968 F.2d 974 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . 1

*Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947 (E.D. Cal. 1990). . . . . . . . . . 1, 9, 11

STATUTES, REGULATIONS AND RULES -

<u>Federal</u>

28 C.F.R. § 36, App. A.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

28 C.F.R. Pt. 36, App. A subpt. C. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 C.F.R. § 36.104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 C.F.R. § 36.203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 C.F.R. § 36.204. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 C.F.R. § 36.208(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 10, 12

28 C.F.R. § 36.302(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

28 C.F.R. § 36.302(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 C.F.R.  § 36.302(c)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 C.F.R. § 36.302(c)(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 12101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

42 U.S.C. § 12182(a)(2)(A)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

42 U.S.C. § 12182(b)(2)(A)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S <u>REPLY</u> ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW     -ii-     S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

42 U.S.C. §12182(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 5

State

Civ.C. § 52(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Civ.C. § 54.1(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S <u>REPLY</u> ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW

-iii-

S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

**I.     The Court Should Grant an Injunction Because Despite Defendant's Opposition the Facts and the Law Strongly Favor Plaintiff.**

This Court has broad discretion to grant a preliminary injunction in this case.  The granting or denial of a preliminary injunction will be reversed only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *Senate of Cal. v. Mossbacher*, 968 F.2d 974, 975 (9th Cir. 1992).  Even when a preliminary injunction requires affirmative action by the enjoined party, courts do grant them where the facts and law merit them.  *See, e.g., Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 14031404 (9th Cir. 1993) (upholding preliminary injunction requiring drug manufacturer to provide drugs to study participants and to inject the drugs into the participants' veins); *Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947, 959 (E.D. Cal. 1990) (issuing preliminary injunction requiring defendant school district to allow plaintiff student's service dog).

In this case, defendant has substituted its judgment for the judgment of Congress and the California legislature.  The ADA establishes a specific process for determining whether a service dog may be excluded from a hospital.  Defendant's behavior flouts that lawful procedure.

Plaintiff is not asking defendant to be compelled to take affirmative action in the sense of providing specific medical treatment, or even unlimited hospital access for service dogs. Plaintiff merely asks that defendant be compelled to comply with the ADA, as many other psychiatric and general hospitals do, by not excluding service dogs unless they have evidence that the dog presents a direct threat to the health and safety of others that cannot be eliminated by a modification of hospital policies, practices or procedures.  *See* 42 U.S.C. §12182(b)(3); 28 CFR § 36.104. The injunction should be granted because defendant admits all the elements of plaintiff's discrimination claim, defendant's generalized fears of adverse consequences do not substitute for its obligation to make individialized assessments of service dogs under specific circumstances, and plaintiff is in imminent harm of losing access to necessary medical care if the Hospital's current policy continues in place.

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S <u>REPLY</u> ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                             -1-                S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

1  **II.    Plaintiff Will Succeed on the Merits Because the Hospital Admits That it Has a Blanket Exclusion for Service Dogs in the Psychiatric Ward and Does Not Deny it Excluded Inglis Without Making an Individualized Evaluation.**

2

3          **A.     Both the Old and New Service Dog Policies Discriminate Against Disabled People Who Use Service Dogs.**

4

5          "[T]he general intent of Congress in was to ensure that individuals with disabilities are

6  not separated from their service animals." *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir.

7  1996) (internal quotation marks omitted).  The Americans with Disabilities Act regulations

8  specifically require public accommodations to allow service animals to go everywhere the public

9  goes unless they are ill-behaved or unhousebroken. 28 C.F.R. § 36.302(c)(1), (2), (7).

10  "Individuals with disabilities <u>shall</u> be permitted to be accompanied by their service animals in all

11  areas of a place of public accommodation where members of the public, program participants,

12  clients, customers, patrons, or invitees, as relevant, are allowed to go." 28 C.F.R.

13  § 36.302(c)(7).  State law is similarly proscriptive: "Every . . . physically handicapped person

14  <u>shall</u> have the right to be accompanied by a guide dog, signal dog, or service dog, especially

15  trained for that purpose" in hospitals. Civ.C. §§ 54.2(a), 54.1(a)(1).

16          Yet defendant's opposition demonstrates that the Hospital has "doubled down" on

17  discrimination against people with service dogs.  While its 2011 service dog policy made no

18  clear statement about the psychiatric ward, defendant now tells us that since 2012 the policy has

19  explicitly prohibited all service dogs from the psychiatric ward, without exception.  Docket No.

20  42-2, Bukunt Dec., Exhibit 2.  Regrettably, the 2012 policy also continues its previous errors as

21  to the rest of the Hospital. It states:

22          Procedures for Managing Requests for Service Animals.  The following general
           guidelines apply when a patient requests access for his/her service animal. . . . (5)
23          The patient shall be informed of the following: . . . (c)(5)  If the animal's
           presence or behavior adversely affects or compromises a person's physical or
24          emotional well-being, . . .( e.g., allergies of staff and/or patients, interference with
           therapies, noise disruption, etc.), the disabled person/patient will be asked to
25          make alternative arrangements for the animal.

26  *Id*. at Exhibit 2, § V.C. This language does not comply with the ADA requirement that hospitals

27  demonstrate a "direct threat" to actual health and safety that cannot be ameliorated in order to

28  exclude a service dog. 28 C.F.R. § 36.208(b); *see also* 42 U.S.C. § 12182(b)(3). "Direct

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S <u>REPLY</u> ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                    -2-                    S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

threat" does not include allergies or "adverse effects on emotional well-being." "Allergies and fear of dogs are not valid reasons for denying access or refusing service to people using service animals." Docket No. 31-8, McGuinness Dec., Exhibit 8, 2011 DOJ technical assistance publication, "ADA Revised Requirements: Service Animals," at p. 2. The Hospital's policy discriminates against service dog users by "utiliz[ing] standards or criteria or methods of administration that have the effect of discriminating on the basis of disability, or that perpetuate the discrimination of others who are subject to common administrative control." 28 C.F.R. § 36.204. A service dog policy that denies service dog users "meaningful access" to services that remain open and easily accessible by others is per se discriminatory. *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996).

Plaintiff will prevail on her discrimination claim because defendant's policy violates the ADA and state law, and because defendant actually discriminated against plaintiff based on her disability during her 2011-2012 hospitalization. Defendant does not deny that plaintiff is disabled or that it excluded her service dog against her direct request and her treating psychiatrist's order. Docket No. 30, Tamara Dec., at ¶ 26. Defendant does not dispute that it gave plaintiff three different reasons for doing so (none of them the same as offered by Dr. Tomasini now). *Id.* at ¶¶ 23, 29, and 32; Supplemental Tamara Dec., at ¶ 9. Most critically, defendant does not deny that it never evaluated whether Inglis presented a danger under the circumstances existing in the psychiatric ward at the time. Docket No. 30, Tamara Dec., at ¶ 25. The only evidence before this Court is that Ms. Tamara was in stable mental health but great pain, that she was able to care for Inglis, and that Inglis is a well-trained, certified service animal whose behavior is impeccable. *Id.* at ¶¶ 11-20, 35, 43; Supplemental Tamara Dec., at ¶12. The Hospital has offered no evidence that Inglis should have been excluded from the ward. Plaintiff will succeed on the merits of her claim.

**B.   Defendant Has Not Met its Burden to Justify its Blanket Exclusion.**

The ADA and its regulations make it clear that a hospital wishing to exclude a service dog has the burden to show that the dog poses a direct threat to health or safety under the

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -3-                    S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

1   circumstances or otherwise fundamentally alters the nature of the services provided. 42 U.S.C.

2   § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.208(b); 42 U.S.C. § 12182(b)(3); *Lentini v. California Ctr.*

3   *for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004).  The ADA names only one

4   presumptive exception: Operating rooms or other places where infection control measures are in

5   place. 28 C.F.R. Pt. 36, App. A, subpt. C.  Neither the ADA nor State law creates or even

6   mentions an exception for psychiatric hospitals.[1]  In sum, Congress, the DOJ and the State

7   Legislature have already concluded that a blanket exception in psychiatric wards is not

8   permitted.

9          Nor is a blanket prohibition necessary, despite the Hospital's protests.  The direct threat

10  exception established in the regulations is presumptively sufficient to protect public safety.

11  "Public accommodations have the ability to determine, on a case-by-case basis, whether a

12  particular service animal can be excluded based on that particular animal's actual behavior or

13  history--not based on fears or generalizations about how an animal or breed might behave. This

14  ability to exclude an animal whose behavior or history evidences a direct threat is *sufficient* to

15  protect health and safety."  28 C.F.R. § 36, App. A. (emph. added.)  This regulatory presumption

16  is borne out by evidence that numerous hospitals, including both stand-alone psychiatric

17  hospitals and hospitals with psychiatric wards, have created policies permitting service dogs in

18  their psychiatric wards.  Docket Nos. 31-2, 31-3, 31-4, 31-5, 31-6, McGuinness Dec., Exhibits

19  2-6.  These policies all follow the ADA language allowing exclusion where a dog, after an

20  individualized assessment, presents a direct threat to safety that cannot be mitigated.  *Id.*

21         "Because few, if any, activities in life are risk free, . . . the ADA does not ask whether a

22  risk exists, but whether it is significant."  *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998); *see also*

23

24  _____

25         [1]      Defendant cites to a 1993 DOJ letter that itself refers to a 1988 memorandum
    interpreting the Rehabilitation Act.  The 1993 letter plainly states that service dogs are excluded
26  only under "rare circumstances." Defendant has provided no authority that this Court should be
    bound by the reference to psychiatric wards in the 1988 memorandum.  Given that the 1988
27  memorandum predates the ADA and the DOJ subsequently established very clear service dog
    regulations never once referring to psychiatric wards as an exception, the memorandum has no
28  persuasive value.

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                    -4-                    S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

1  42 U.S.C. § 12182(b)(3).  The Ninth Circuit has already confirmed that generalized fears do not

2  justify policies imposing a blanket prohibition on service animals.  *Crowder v. Kitigawa* held

3  that the State of Hawaii could not keep service animals in quarantine despite the state's concern

4  to prevent rabies in the islands.  81 F.3d 1480 (1996).  There the state had documented concerns

5  about rabies, but it had no specific evidence that the harm was real or significant.  *Id.* at 1482.

6  Neither has the Hospital in this case.

7          Dr. Tomasini's and Mr. Fitzgerald's declarations overflow with generalized fears, as

8  well as speculation, conjecture and surmise, about the potential danger of service dogs in the

9  psychiatric ward.[2]  Patients "may" be sedated or restrained.  A harness has the "potential" or

10  "could be" used as a weapon or "could be a suicide risk to the owner."  Patients "often" have

11  psychosis.  It is "more likely than not" that "a number of patients" "may" fixate on a service

12  dog.  Docket No. 44, Tomisini Dec., at ¶ 4. "The presence of an animal may spark a response in

13  the patient." Docket 41, Fitzgerald Dec., at ¶ 4.

14          Speculation, conjecture and surmise have no value, however, under the ADA and state

15  law.  If in a particular situation one or more of Dr. Tomasini's concerns were actually present

16  (e.g., the service dog user is sedated or restrained), then it may be appropriate to exclude the

17  dog.  But this particular factor, a patient being unable to care for the dog, is not unique to

18  psychiatric wards.  There must be plenty of sedated patients on medical wards where El Camino

19  does allow service dogs.  Thus, the mere fact that some service dog owner may be sedated does

20  not justify excluding all service dogs.  Likewise, defendant's other concerns may be real in a

21  given instance, but again the Hospital has an obligation to modify its policies and procedures to

22  ameliorate the risk, if possible, before concluding that the only solution is excluding the service

23  dog.

24

25          [2]      Defendant's brief asserts without evidence or authority that only patients who are
26  a danger to themselves or others are admitted to a locked psychiatric ward.  Opp. at 9:27-28.
    Not even Dr. Tomasini asserts that is true because it is simply false.  Ms. Tamara was not a
27  danger to herself or others when she went into the Hospital in December 2011.  Docket No. 30,
    Tamara Dec., at ¶ 35.  Both she and Arthur Shorr testify that many patients are admitted to the
28  psychiatric ward who are no danger to anyone. *Id;* Shorr Dec., at ¶ 9.

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -5-                    S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

1   In fact, defendant's own witnesses testify that the psychiatric unit is uniquely qualified to

2   manage patient responses to new situations.  This testimony undermines defendant's claim that

3   allowing service dogs would in all cases work a fundamental alteration in the facility by

4   undermining its clinical effectiveness.  Mr. Fitzgerald testifies that the psychiatric unit is well-

5   trained and practiced in handling adverse reactions by patients, and that although such reactions

6   happen "often" in the ward, the staff does an "excellent" job of mitigating those risks:

7   The inpatient psychiatric setting is unfortunately notoriously an area of risk for
    agitation and stress. The staff does an excellent job in mitigating risk of violence,

8   a combination of their training and their experience. Human behavior is difficult
    to predict. Often, an agitated patient will trigger agitation, fear and/or anxiety in

9   others, with behavioral consequences. The psychiatric setting is charged with
    having providing safety to patients in the event that they are a threat to

10  themselves or other. This is different than other hospital units, where it would be
    an unusual occurrence for a patient to act out and injure themselves of others.

11

12  Docket No. 41, Fitzgerald Dec., at ¶ 3.  Dr. Tomisini also states that milieu therapy by its nature

13  presents risks that staff is trained to manage.  "Although milieu therapy is intended to mimic to

14  some degree a community and allow patient to function independently, the milieu environment

15  contains numerous risk factors for patients and staff. In order to reduce these risks items which

16  could be used to harm patient or staff must be eliminated from uncontrolled areas, and efforts

17  must be taken to eliminate potential sources of stress and disruption."  Docket No. 44, Tomisini

18  Dec., at ¶ 4 (Docket Page No. 14).

19   As a matter of hospital administration and policy, plaintiff's rebuttal witness Arthur

20  Shorr agrees it is part of a hospital's express mission to treat patients as individuals and respond

21  to their individual needs with modifications to policy and procedure where necessary. Shorr

22  Dec., at ¶¶ 14-18.  Mr. Shorr is a Board-Certified Hospital and Healthcare Administrator who

23  established and managed a locked psychiatric ward at Cedars-Sinai Medical Center in Los

24  Angeles.[3]  Shorr Dec., at ¶¶ 1, 2.  Mr. Shorr testifies that in addition to the ADA,  hospital

25  _____

26   [3]   Mr. Shorr spent 16 years as a  senior executive at hospitals such as Cedars-Sinai
    Medical Center in Los Angeles.  He is currently a consultant and holds an academic position at

27  the George Washington University School of Public Health & Health Services.  He has had
    direct management oversight of locked and unlocked psychiatric units in the hospitals where he

28  has worked.  He has personal knowledge of the process by which hospitals establish and

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                   -6-                    S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

1   accreditation standards require hospitals to respond to the individual needs of their patients

2   under the circumstances.  *Id.*  Patient care plans are created and modified continually to adapt to

3   the patient's changes and the changes in the ward, to protect vulnerable patients and manage

4   aggressive ones.  *Id.*

5   It appears that defendants' psychiatric ward staff is experienced at managing unusual

6   reactions.  It should be capable of planning for them in advance.  *Id.*  Where the staff concludes,

7   for medically-based reasons, that a particular situation is too volatile and there is no way to

8   manage the risk, then it would be correct to exclude a service dog.  But it is not correct to

9   exclude the dog without reference to the specific circumstances at the time, and without

10  attempting to find a way to mitigate the risk.

11  Each of the concerns Dr. Tomasini raises in the abstract has a reasonable solution in

12  practice.  Options for reasonable modifications to hospital practices abound.  They can be as

13  simple as "shutting doors" where necessary.  *See, e.g.,* McGuinness Supplemental Dec., Exhibit

14  11, "Required Accommodations for Disabled Individuals' Service Animals in Dialysis

15  Facilities," Dept. Health & Human Svcs Ofc. of the Gen'l Counsel, July 12, 2010 at 6.  This is

16  an option at El Camino Hospital, which has both a "milieu" area of its ward, the Psychiatric

17  Acute Care Unit (PACU), and a separate locked ward, the Psychiatric Intensive Care Unit

18  (PICU).  Tamara Supp. Dec., at ¶ 3, and Exhibit 9.  In fact, actively suicidal or psychotic

19  patients are unlikely to be permitted in the "milieu" area of the ward.  *Id.*; Shorr Dec., at ¶ 14.

20  Mr. Shorr offers reasonable practice and procedure modifications that meet the

21  Hospital's other concerns, such as keeping a dog's harness on him at all times and keeping other

22  accoutrements such as leashes under lock and key.  Shorr Dec., at ¶ 13.  As Mr. Shorr and Ms.

23  Tamara both point out, in an adequately-staffed ward where potentially risky patients have been

24  identified, it is unlikely that a patient could wrest a dog's harness off him and use it as a weapon

25

26

27  _____

28  implement policies, procedures, rules, regulations, and bylaws, including policies and
    procedures for locked psychiatric units.  Shorr Dec., at ¶¶ 1-2, curriculum vita, Exhibit 10.

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -7-                    S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

1  before staff intervened.[4]

2  But even this situation involves speculation, because there may not even be an assaultive

3  or suicidal patient in the PACU when the service dog is present.  Other scenarios also present

4  themselves where a service dog would present absolutely no threat: What if the service dog-

5  using patient is the only patient on the ward?  What if the other patients on the ward are locked

6  in the PICU?  Anyone can imagine a set of ideal circumstances to match the Hospital's worst-

7  case scenarios.

8

9  **C.  Courts Do Not Defer to A Medical Care Provider's Opinion in the Absence of Data.**

10

11  At bottom, this motion should not devolve into a battle of experts opining about "what

12  ifs." The case turns on the Hospital's obligation to treat each patient under the individual

13  circumstances presented, including its physically disabled patients.  *See* Shorr Dec., at ¶¶ 14-18;

14  42 U.S.C. § 12182(a)(2)(A)(ii); 28 C.F.R. §§ 36.203, 36.302(c)(1).  The Hospital has presented

15  no legal or factual reason it should not have to abide by the ADA as other hospitals do, and

16  exclude service dogs only when evidence in the circumstances demonstrates a direct threat that

17  cannot be ameliorated by reasonable modifications to policies, practices or procedures.

18  The ADA's provisions are a "clear and comprehensive national mandate for the

19  elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

20  When a question of the reasonableness of modifications to policy practice or procedure arises,

21  the courts do not defer even to the health and safety findings of a state agency. "The court's

22  obligation under the ADA and accompanying regulations is to ensure that the decision reached

23  by the state authority is appropriate under the law and in light of proposed alternatives.

24  Otherwise, any state could adopt requirements imposing unreasonable obstacles to the disabled,

25  and when haled into court could evade the antidiscrimination mandate of the ADA merely by

26  _____

27  [4]  If weaponry is a real concern, it seems odd that the Hospital issued plaintiff a

28  walker, which could be taken from her much more easily than a harness attached to a dog. *See also* a wheelchair and a prosthetic leg used as a weapon, Shorr Dec., at ¶ 12.

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

PLAINTIFF'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW          -8-          S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

1  explaining that the state authority considered possible modifications and rejected them."

2  *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996).

3          Similarly, when determining the propriety of a medical provider's "direct threat"

4  analysis, the Supreme Court has directed lower courts not to defer to medical providers'

5  opinions in the absence of data.  In *Bragdon v. Abbott*, 524 U.S. 624 (1998),  a dentist refused to

6  treat a patient who had HIV, in fear that the virus would be transmitted to him or his staff.  Cite.

7  The Court rejected the dentist's opinion because it was not based on medical or other objective

8  evidence:

9          As a health care professional, petitioner had the duty to assess the risk of
          infection based on the objective, scientific information available to him and
10  others in his profession. His belief that a significant risk existed, even if maintained in good
    faith, would not relieve him from liability. . . . [P]etitioner receives no special deference simply
11  because he is a health care professional.

12  *Id.* at 649.

13          Here, defendant asserts it established the Hospital's service dog policy in compliance

14  with Hospital policy-making procedures. Docket No. 42, Bukunt Dec., at ¶ 3.  Defendant

15  apparently expects this Court to defer to its policy-making processes, because it offers no

16  evidence to support the policy it established.  Dr. Tomisini's declaration comprises only his

17  opinion and is devoid of objective evidence.  This Court should not defer to it, as the Supreme

18  Court directs.

19

20          **D.      Defendant's "Alternate Measures" for Accommodating Plaintiff Are Neither
                  Legal Nor Effective.**

21

22          Defendant erroneously states that plaintiff's "need for assistance" could be met by

23  providing her a wheelchair or an attendant.  Opp. at 8:17-19.  In the first place, defendant has it

24  backwards.  Plaintiff does not have a need for assistance.  She has a need for independence.

25  *Sullivan, supra*, 731 F. Supp. at 958. Asking her to give up her dog is asking her to change her

26  personality.  *Id.*

27          Furthermore, the existence of "alternate measures" for accommodation is not a factor in

28  determining whether a dog must be excluded.  Only the "direct threat" factors may be

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
**(510) 832-5001**

PLAINTIFF'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                    -9-                    S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

1   considered:   The nature, duration, and severity of the risk; the probability that the potential

2   injury will actually occur; and whether reasonable modifications of policies, practices, or

3   procedures or the provision of auxiliary aids or services will mitigate the risk. 28 C.F.R.

4   § 36.208(b); *Roe v. Providence Health Sys.-Oregon*, 655 F. Supp. 2d 1164, 1168 (D. Or. 2009).

5   The question of providing alternate measures only arises if and when a dog must be excluded.

6   28 C.F.R. § 36.302(c)(3).

7           In addition, defendant has already tried and failed at its suggested alternate measures.

8   The Hospital provided Ms. Tamara  a walker at her last hospitalization, which was difficult to

9   use given the Hospital's inaccessible restrooms and crowded patient rooms.  Docket No. 30,

10   Tamara Dec., at ¶¶ 37-39; Tamara Supp. Dec., at ¶ 6.  The Hospital also offered her an

11   "attendant" at night but the attendant did not attend when needed.  Tamara Supp Dec., at ¶ 7.

12   The plain fact is that Ms. Tamara struggled without her service dog and the Hospital has not

13   demonstrated it was necessary to impose that struggle upon her.

14

15   **III.    The Injunction Should Be Granted Because Defendant's Policy Causes Imminent**
16   **Harm to Plaintiff and Violates Public Policy Favoring Equal Treatment for**
     **Disabled People in Hospitals.**

17           **A.    Defendant's Policy Causes Plaintiff Imminent Harm**

18           Defendant asserts that Ms. Tamara was not harmed by removing Inglis, an error she ably

19   rebuts. Docket No. 30, Tamara Dec., at ¶¶ 19, 38-42, 53; Tamara Supp. Dec., at ¶¶ 8, 15.

20   Defendant's assertion is particularly erroneous given that Ms. Tamara's physician's made a a

21   written order to allow the dog, presumably because the dog was medically necessary.  Docket

22   No. 30, Tamara Dec., at ¶ 26.  Defendant's emphasis on "physical injury or deficiency in . . .

23   treatment" illustrates that Defendant is oblivious to the intrinsic harm that a reduction in

24   independence. causes.[5]  Opp at 9:11-12.

25   _____

26           [5]     While defendant cavils that plaintiff would have been allowed Inglis in the
     medical ward had she "made a further request" (Opp. at 1:7-8), the only evidence presented to
27   this Court is that plaintiff was told her dog would not be admitted until Infection Control got the
     MRSA results; that plaintiff wanted Inglis and would have used him on the medical ward; and
28   that the Hospital made no effort to enable plaintiff to use him on the medical ward.  Docket No.

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                     -10-                S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

1      The courts are not oblivious, however.  They have held that denial of a service dog is

2  harm *in se.*   *See Chalk v. United States Dist. Court,* 840 F.2d 701, 710 (9th Cir.1988); *Sullivan*

3  *v. Vallejo City Unified School Dist.,* 731 F.Supp. 947, 961 (E.D. Cal.1990).  Defendant provided

4  this Court no authority to rebut these cases.

5      This case presents additional specific imminent harm.  Ms. Tamara testifies that she now

6  is struggling with a relapse of her bipolar disorder as well as physical infirmities.  Docket No.

7  30, Tamara Dec., at ¶¶ 50-53; Tamara Supp. Dec., at ¶¶ 14-15.  She has been trying to manage

8  the situation with outpatient treatment at OATS.  Tamara Supp. Dec., at ¶¶ 14-15.  She can no

9  longer attend regularly because she has both feet immobilized in CAM boots, so OATS has

10  discharged her.  *Id.*  Now plaintiff is at home struggling with both sets of health problems.  *Id.*

11  She would like the option to use the Hospital but cannot because the Hospital will deny her

12  service dog and thus her independence.  *Id.*  Defendant's policy is denying Ms. Tamara equal

13  access to medical treatment. That is imminent harm.

14

15      **B.     The Balance of Hardships and Public Policy both Favor Plaintiff**

16      The Hospital's legal obligation to comply with the ADA renders irrelevant any

17  inconvenience it may experience in complying.  As one court concluded in issuing a preliminary

18  injunction against a school district that excluded a student's service dog,

19      Moreover, the balance of hardships tips strongly in plaintiff's favor. The
        defendant school district has shown only that it will suffer the apparently minor
20      inconvenience of having to restructure plaintiff's educational program in order to
        accommodate her service dog. In view of its legal obligation to do so, however,
21      this type of inconvenience cannot outweigh the injury suffered by plaintiff to both
        her working relationship with her dog and her dignity and self-respect.
22

23  *Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947, 961 (E.D. Cal. 1990).  Defendant

24  does not claim any administrative hardship.  Hospitals are well-equipped to manage individual

25  patient needs.  Shorr Dec., at ¶¶ 14-18.

26      The ADA identified a strong public interest  in enabling disabled people to live equal,

27  _____

28  30, Tamara Dec., at ¶¶ 27-30.

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                    -11-                    S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

1  independent lives.  42 U.S.C. § 12101.  This policy is nowhere stronger than when applied to

2  equal treatment in medical care.  *Indep. Living Ctr. of S. California, Inc. v. Maxwell-Jolly*, 572

3  F.3d 644, 659 (9th Cir. 2009).  Although the Hospital seeks to impose a blanket exclusion of

4  service dogs from psychiatric wards, that is simply not the choice that Congress and the State

5  Legislature have made.  The public has the highest interest in ensuring that the legislative

6  mandate is enforced. *Crowder, supra,* 81 F.3d at 1485.  Given that the "direct threat" exception

7  already present in the law adequately protects the health and safety of other patients in the ward

8  (*See* 28 C.F.R. § 36, App. A, direct threat analysis "sufficient to protect health and safety"),

9  there is no public policy or equitable consideration weighing against enforcement of the law.

10

11  **IV.    The Court Should Craft An Order That Ensures Defendants Follow The DOJ**
         **Regulations Regarding Service Dogs.**

12

13          "When Congress has passed antidiscrimination laws such as the ADA which require

14  reasonable modifications to public health and safety policies, it is incumbent upon the courts to

15  insure that the mandate of federal law is achieved." *Crowder, supra,* 81 F.3d at 1485.  Plaintiff

16  requests that the Court order defendant to follow the ADA and its regulations: When she or

17  other patients arrive at the Hospital with a service dog, the dog presumptively must be allowed;

18  but if the Hospital has a concern that a particular dog under particular circumstances presents a

19  "direct threat to the health and safety of others" it must conduct "an individualized assessment,

20  based on reasonable judgment that relies on current medical knowledge or on the best available

21  objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability

22  that the potential injury will actually occur; and whether reasonable modifications of policies,

23  practices, or procedures or the provision of auxiliary aids or services will mitigate the risk." 28

24  C.F.R. § 36.208(b).  After making that determination, defendant is free to exclude a service dog

25  under the circumstances if the dog presents a direct risk and there are no reasonable

26  modifications of policy or practice that will ameliorate the risk.  Plaintiff suggests that the

27  Edwards Hospital (including Linden Oaks  Psychiatric Hospital) or Johns Hopkins Medical

28  Center policies, developed in conjunction with the DOJ, provide a useful template.  Docket Nos.

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S <u>REPLY</u> ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                                            -12-

S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd

1   31-2 and 31-3, McGuinness Dec., Exh. 2, 3.

2

3                            **CONCLUSION**

4           For the foregoing reasons, plaintiff respectfully requests the Court issue a preliminary

5   injunction ordering defendant to allow service animals in the Hospital in compliance with state

6   and federal law.

7

8   Dated: July 25, 2013                          Respectfully submitted,

9                                                 LAW OFFICES OF PAUL L. REIN

10

11          _____/s/ Celia McGuinness_____
            By CELIA McGUINNESS
            Attorneys for Plaintiff
12          ABIGAYIL TAMARA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
**PAUL L. REIN**
**200 LAKESIDE DR., SUITE A**
**OAKLAND, CA 94612-3503**
**(510) 832-5001**

PLAINTIFF'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C12-1032 RMW                     -13-          S:\CASES\E\EL CAMINO HOSPITAL\PLEADINGS\Preliminary Injunction\Reply\Reply Brief 7-25-13.wpd