UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ABIGAYIL TAMARA,<br><br>Plaintiff,<br><br>v.<br><br>EL CAMINO HOSPITAL; DAVID DIGANT; and DOES 1-20, Inclusive,<br><br>Defendants. | Case No. C-12-01032-RMW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>[Re Docket No. 29] |

Abigayil Tamara is a qualified disabled person who uses a service dog for independence and mobility. El Camino Hospital refused to allow her service dog to accompany her during a 2011 stay in its locked psychiatric ward. She sues for this alleged violation of her civil rights under federal and state law. Now, Tamara alleges that her ailing health requires in-patient treatment and El Camino's current service animal policy apparently prohibits all service animals from its behavior health units, which include its locked psychiatric ward. Tamara requests a preliminary injunction requiring El Camino to admit service dogs unless it has substantive evidence based on an individualized assessment that the dog is a direct threat to the health and safety of the operation, which cannot be mitigated by reasonable accommodations. Defendants oppose the motion arguing

that allowing service animals into a sensitive psychiatric ward would impose a danger that the hospital could not mitigate without fundamentally altering the nature of the facility.

## I. BACKGROUND

Abigayil Tamara is a 70-year-old retired woman with a number of physical disabilities. Her primary condition is a mobility disability resulting from surgery for a herniated disk in 1994 and back fusion surgery in 2009. She has difficulty walking and maintaining her balance, and because of her back condition, she has had a disabled parking placard and a disabled license since 2007. Since June 2010, Tamara has used a service dog named Inglis. Tamara and Inglis trained extensively when they were matched, and they supplement training daily. She walks with him and balances by leaning on the rigid handle of his harness. Inglis also retrieves things, carries items, opens some doors, pushes handicapped and elevator buttons, helps Tamara take off her jacket, and puts her laundry in the laundry basket. Tamara alleges that her independence and mobility have greatly increased since being matched with Inglis and that it is important for her to take Inglis everywhere, not only because he provides important services for her, but also because this is part of the training and bonding requirement of owning a service dog.

Tamara also has bipolar disorder, a brain disorder that causes unusual shifts in mood, energy, activity levels, and the ability to carry out day-to-day tasks. She has been on psychiatric medication since 1983, which causes a number of side effects, including diminishing her white blood cell count and compromising her immune system. In 1999, the Social Security Administration declared Tamara disabled because of her bipolar disorder.

Tamara exclusively uses the defendant, El Camino, for hospital services. Her psychiatrist and two of her medical doctors have privileges there, and she has been hospitalized five times at this hospital. She wears a bracelet through Lifeline Service that activates a machine in her home to communicate directly with El Camino.

### A. 2011 Hospitalization

In December 2011, the medication changes ordered by her psychiatrist began causing Tamara pain. On December 24, 2011, Tamara went to the emergency room of El Camino with Inglis. El Camino admitted her to rebalance her medication and manage her pain. Although her

ORDER GRANTING PI
Case No. C-12-01032-RMW
SW/JU
- 2 -

condition was physical, not psychological, El Camino placed her in the psychiatric ward where her practicing psychiatrist worked, so that he could monitor her symptoms. When the orderly came to escort Tamara to the psychiatric ward, he informed Tamara that Inglis was not allowed in the hospital, allegedly stating that dogs have not been allowed since someone was bitten.

The next day, Tamara's treating psychiatrist wrote an order for Inglis to be admitted, but it was apparently disregarded. Tamara was allegedly informed that Infection Control, which was closed until December 27, would have to approve the dog. On December 27, Infection Control instructed Tamara that Inglis would not be approved unless he was tested for MRSA. Tamara made arrangements for the test. On December 28, Tamara asked to meet with the manager of the psychiatric ward, defendant David Digant, who allegedly asserted that Tamara should transfer to another hospital because Inglis would not be allowed in the hospital under any circumstances.

During this time, El Camino provided Tamara with a walker, which she used for her entire thirteen-day stay. Tamara asserts that El Camino never allowed Inglis back into the hospital, even after Tamara was transferred out of the psychiatric unit. Tamara claims that the walker limited her movement, was awkward to use, and that she had more trouble carrying things and using the bathroom than she would have had with Inglis. She alleges that because she was deprived of Inglis, she was less independent, and had to wait extended periods for help with small tasks like picking up dropped items. She contends that after days of frustrating attempts to use the walker, she "gave up on everything" and asked for a portable toilet to use by her bed so that she would not have to go anywhere.

**B. El Camino Hospital's Service Animal Policy**

At the time of Tamara's hospitalization in 2011, El Camino Hospital's policy allowed service animals in all areas of the hospital except (1) areas with established traffic control, and (2) areas that the hospital determined necessary to restrict on a case-by-case basis in order to protect the health and safety of the patients. Decl. Bukant, Ex. A ("Old Policy"), Dkt. No. 42-1. Currently, the Hospital's policy allows service animals "in any area of the Hospital that is unrestricted to inpatients, outpatients or visitors such as lobbies, cafeterias and patient rooms provided that the service animal does not pose a Direct Threat to the health and safety of others and would not require

a fundamental alteration in the Hospital's policies and procedures." Decl. Bukant, Exhibit B ("New Policy"), Dkt. No. 42-2. Under the New Policy, the Hospital does not allow the public or service animals in several "restricted access areas," which include its Behavioral Health Units (psychiatric wards). *Id.* at 2.

Currently, Tamara receives outpatient psychiatric treatment through the Older Adults Transitional Services program, but her condition requires her to consider inpatient treatment. Because she believes that El Camino never gave a consistent answer as to why it refused to let her use Inglis in 2011, Tamara alleges that admission to the hospital will once again result in her being deprived of Inglis. She alleges she is forced to choose between adequately addressing her health issues and maintaining her civil rights. Therefore, she seeks a preliminary injunction requiring El Camino Hospital to admit service dogs unless it has substantial evidence that a dog poses a "direct threat" to the health and safety of others that cannot be mitigated by reasonable modifications of policies, practices, or procedures in accordance with the law. El Camino Hospital opposes the injunction, asserting that the Hospital's policy of excluding service animals only in certain restricted areas, including the locked inpatient psychiatric ward, is consistent with the law. El Camino Hospital argues that if Tamara were admitted to the psychiatric ward again, she would have difficulty caring for Inglis, and the highly sensitive nature of the treatment facilities in that unit would make the admission of dogs dangerous for the all staff, patients, and service animals.

## II. ANALYSIS

Preliminary injunctions are supposed to "preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenish*, 451 U.S. 290, 395 (1981). It is an "extraordinary and drastic remedy," requiring the movant to clearly carry the burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A movant must show that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

Because preliminary injunctions are supposed to maintain the status quo, requests like the instant one for mandatory actions, rather than prohibitions, are subject to heightened scrutiny and

ORDER GRANTING PI
Case No. C-12-01032-RMW
SW/JU
- 4 -

should not be granted "unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993); *see also Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994) ("When a mandatory preliminary injunction is requested, the district court should deny such relief 'unless the facts and law clearly favor the moving party.'")

Tamara asserts that she meets this heightened standard because the El Camino's current policy, which violates federal and state law, is likely to irreparably injure her, and because altering the policy would be at little or no cost to El Camino. El Camino disagrees, arguing that Tamara is unlikely to succeed on the merits, and that she has not affirmatively demonstrated that its current policy will cause her irreparable harm.

### A. Likelihood of Success on the Merits[1]

Title III of the Americans with Disabilities Act ("ADA") provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods services, facilities, privileges, advantages, or accommodation of any place of public accommodation." 42 U.S.C. § 12182. To prevail on her discrimination claim, Tamara must show that "(1) she is disabled within the meaning of the ADA; (2) Defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) Plaintiff was denied public accommodations by Defendant because of her disability." *Miller v. Ladd*, No. C-08-05595-NJV, 2010 WL 2867808 (N.D. Cal. July 20, 2010) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724 (9th Cir. 2007)); 42 U.S.C. § 12182.

#### 1. There is no dispute as to Tamara's or the Hospital's status

The ADA defines a person with a disability as someone with "a physical or mental impairment that substantially limits one or more major activities of such individual." 42 U.S.C. 12102. Major life activities include "walking, standing, lifting [and] bending." 42 U.S.C. § 12102(2)(A). Defendants do not dispute that Tamara qualifies as a person with a disability: she has mobility and balance limitations, osteoporosis, and other physical ailments that interfere with these

---

[1] Tamara moves for a preliminary injunction under both federal and state law. Because the court can properly grant her motion under federal law, the court does not consider her state law arguments.

ORDER GRANTING PI
Case No. C-12-01032-RMW
SW/JU

- 5 -

major activities. El Camino Hospital is a medical facility maintained and operated as a business establishment open to the public. Hospitals are places of public accommodation for the purposes of the ADA, 42 U.S.C. § 12181(7), and defendants do not dispute that El Camino is a place of public accommodation.

### 2. Impermissible Discrimination

A hospital illegally discriminates under the Americans with Disabilities Act if it fails to make reasonable accommodations for a person with a service animal. 42 U.S.C. § 12182(b)(2)(A)(ii). A hospital does not discriminate, however, if (1) the accommodations would fundamentally alter the nature of the facility or service it provides, 42 U.S.C. § 12182(b)(2)(A)(ii); or (2) based upon an individual assessment, the hospital determines that the service animal poses a substantial and direct threat to health or safety which cannot be mitigated by reasonable accommodations, 28 C.F.R. § 36.208. Unless either of these conditions exists, El Camino must make accommodations for Inglis.

#### a. Fundamental alteration

A place of public accommodation "shall modify [its] policies, practices, or procedures to permit the use of service animals to persons with a disability." 28 C.F.R. § 36.302(c)(1). Health care facilities, in particular, "must allow a person with a disability to be accompanied by a service animal in all areas in which that person would otherwise be allowed," unless the particular service animal presents a direct threat as explained in the next section. 28 C.F.R. Pt. 36, App. A, subpt. C; *see also* 28 C.F.R. pt. 36, app. B. ("It is intended that the broadest feasible access be provided to service animals in all places of public accommodation, including … hospitals."). Hospitals may refuse to accommodate an individual with a disability if the accommodation would fundamentally alter the nature of the facility or service offered. 42 U.S.C. § 12182(b)(2)(A)(ii). Such an assertion is an affirmative defense. *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004).

Although places of public accommodation can adopt blanket policies when service animals would fundamentally alter the nature of the service, such policies are rarely appropriate. Because a determination of whether an accommodation fundamentally alters the nature of a service is "an

1 intensively fact-based inquiry," courts focus on the specific facts of individual situations and may
2 require an individualized assessment. *See Martin v. PGA Tour, Inc.*, 994 F. Supp. 1242, 1249 (D.
3 Or. 1998) (finding an individualized assessment was required) *aff'd* 204 F.3d 994, 1001 (9th Cir.
4 2000) *aff'd*, 532 U.S. 661 (2001); *Lentini v. California Ctr. for the Arts, Escondido,* 370 F.3d 837,
5 845 (9th Cir. 2004). The only generally recognized exception—allowing blanket prohibitions of
6 service animals—is in "limited-access areas that employ general infection-control measures" such as
7 those requiring strict hygiene rules and protective barriers like gloves, gowns, and masks. *See* 28
8 C.F.R. § 36 app. A, subpt. C (following the Centers for Disease Control and Prevention ("CDC"),
9 Guidelines for Environmental Infection Control in Health–Care Facilities: Recommendations of
10 CDC and the Healthcare Infection Control Practices Advisory Committee ("Guidelines") (June
11 2003)[2]); CDC, Guidelines 109. Allowing a service animal in such a place would require a
12 fundamental alteration of the nature of the facility. *Id.* As the CDC notes, "[n]o infection-control
13 measures regarding the use of barrier precautions could be reasonably imposed on the service
14 animal." CDC, Guidelines 109. Thus health care providers may properly have general policies
15 prohibiting service animals from operating rooms, burn units, or similar sterile environments.

16 El Camino, in support of its position that a blanket prohibition on service animals in
17 psychiatric wards is acceptable, provides a 1993 letter referencing a 1988 Memorandum by the
18 Department of Justice, which interprets the "rare circumstances" allowing for exclusion of service
19 animals under the § 504 Rehabilitation Act and mentions psychiatric wards. Decl. Schultz, Dkt. No.
20 43-1. While certain principles of the Rehabilitation Act live on in the ADA, this statute and
21 memorandum predate the ADA. This guideline apparently did not survive the revisions because
22 there is no mention of psychiatric wards in the sections of the Code of Federal Regulations related
23 to service animals or the extensive explanatory appendixes. In light of this, the 1993 letter is not
24 persuasive. Indeed, Tamara provides a more contemporary memorandum "Required
25 Accommodations for Disabled Animals' Service Animals in Dialysis Facilities" by the Department
26 of Health and Human Services Office of the General Counsel, dated, July 12, 2010, providing only
27 two examples of when an animal could be excluded under the fundamental alteration provision: (1)

---

[2] Available at http://www.cdc.gov/hicpac/pdf/guidelines/eic_in_HCF_03.pdf (last visited 7/31/2013).

ORDER GRANTING PI
Case No. C-12-01032-RMW
SW/JU
- 7 -

sterile areas and (2) small areas where the animals physical presence would prevent staff from passing and administering their duties. Suppl. Decl. McGuinness, Ex. A 4, Dkt. No. 49-1 ("Dept. Health Memo").

The El Camino psychiatric ward employs "milieu therapy" which encourages community interaction, and it argues that the presence of an animal "may spark a response in [a] patient that is consequential." Decl. Fitzgerald 2, Dkt. No 4. El Camino created its service dog policy after a literature search and an extensive approval process. Decl. Bukunt, Ex. C, Dkt. No. 42-3. It argues that the inpatient psychiatric setting is "notoriously an area of risk for agitation and stress" and that the presence of a service animal would fundamentally alter the nature of its service because one of the goals of the wards is to "eliminate potential sources of stress and disruption." *Id.*; Tomasini Decl., Dkt. No. 44. El Camino's arguments, however, are speculative: patients "may be sedated," patients "often have severe psychosis," and "it is more likely than not that a number of patients will fixate on the animal." Tomasini Decl. These all suggest that the presence of a service animal might affect the ward, but not that it will fundamentally alter its nature. This is in contrast to sterile environments, which would be impossible to maintain in the presence of a service animal.

Furthermore, El Camino has failed to file anything rebutting Tamara's declaration that asserts that the ward's occupational therapist brought her dog to the unit a number of times while Tamara was there. Tamara Decl. ¶ 33, Dkt. No. 30. Although there are clearly differences between patients and staff, the presence of any dog in the unit challenges many of El Camino's arguments. Moreover, Tamara has provided the service animal policies for a number of stand-alone psychiatric hospitals and individual wards within general hospitals, whose policies allow for the admittance of service dogs. Decl. McGuinness, Exs. 1-8, Dkt. No. 31. She also provides expert testimony that reasonable accommodations in services could be made in psychiatric wards to accommodate service dogs, many as simple as "shutting doors." Decl. Shorr 4-6, Dkt. No. 48. In light of the broad allowance for service animals, El Camino has not met its burden to show that the presence of service dogs within the psychiatric ward is likely to fundamentally alters the nature of the facility nor has it sufficiently established that it conducted an intensive fact-based inquiry.

b. Direct Threat

A place of public accommodation is not required to provide accommodations for disabled persons if the accommodation, based upon an individualized assessment, "poses a direct threat to the health or safety of others." 28 C.F.R. § 36.208. El Camino bears a "heavy burden" to show that Inglis is a direct and significant risk to the health and safety of others. *Lockett v. Catalina Channel Exp., Inc.*, 496 F.3d 1061, 1066 (9th Cir. 2007).

> To show that a direct threat exists, a public accommodation must make
>
> > an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices or procedures or the provisions of auxiliary aids or services will mitigate the risk.

28 C.F.R. § 36.208. This determination "must be based on actual risks and not on mere speculation, stereotypes, or generalizations." 28 C.F.R. § 301(b). Further, the requirement of an *individualized* assessment requires that the public accommodation look into each particular circumstance to determine "what modifications, if any, [are] plausible to accommodate Plaintiff's disability." *Shultz By and Through Shultz v. Hemet Youth Pony League, Inc.*, 943 F. Supp. 1222, 1225 (C.D. Cal. 1996).

First, El Camino has failed to conduct an individualized assessment. Tamara was denied the use of Inglis in the psychiatric ward based upon a general hospital policy. El Camino has not argued that it conducted an individualized assessment. Such a blanket denial is discrimination under the ADA. *Compare Schultz*, 943 F. Supp. at 1225 (finding illegal discrimination for failing to make an individualized assessment as to the specific danger of allowing an individual with cerebral palsy to compete in a lower age bracket regardless of the hypothetical dangers of allowing older, theoretically larger, and stronger children to compete with younger children) *with Roe v. Providence Health System-Oregon*, 655 F. Supp. 2d 1164 (D. Oregon 2009) (denying an injunction after finding hospital appropriately prohibited *a* service dog whose rancid odor posed a risk of infection and whose specific owner refused to bathe it). For example, in *Anderson v. Little League Baseball, Inc.*, Little League Baseball prohibited all baseball coaches in wheelchairs from coaching on the field,

1   although they could still coach from the dugout. 794 F. Supp. 342, 345 (D. Ariz. 1992). The league
2   apparently created the policy in good faith to protect the safety of the young men playing baseball
3   by eliminating a potentially dangerous obstacle, a wheelchair, from their field of play. However,
4   speculations about the potential danger imposed by wheelchairs in general, without looking at the
5   individual and his circumstances, were not enough to justify a blanket prohibition. *Id.*

6   Second, although El Camino argues that having a dog in the psychiatric unit would be unsafe
7   because its harness could be used as a weapon and the dog might dangerously upset some patients,
8   these accusations are all based upon generalized speculation. Some psychiatric wards contain
9   unstable patients who may be upset by a service animal. But, nothing in the answer, opposition, or
10  any of the papers provided by the defendants allege that El Camino made an individualized
11  assessment as to whether *this* psychiatric ward, at the time of Tamara's admittance, had such
12  unstable patients, or if it did, a fundamental alteration would have been required to address any
13  concerns. Further, while a locked psychiatric ward may pose problems for *some* individuals to care
14  for the hygienic needs of their service animals, nothing indicates that El Camino assessed whether
15  Tamara would be capable of caring for *her* dog or if reasonable modifications could allow this.
16  Moreover, while it is possible a service dog's leash or harness could be used as a weapon, nothing
17  indicates that El Camino assessed whether Tamara and Inglis could use a safer type of harness or
18  whether the harness could be safely locked away when not in use. Because a hospital cannot make
19  a direct threat determination based on speculation or generalization, El Camino is unlikely to have
20  complied with the ADA. *See* 28 C.F.R. § 36.301(b).

21  Finally, Tamara provides factual allegations that dispute many of El Camino's
22  generalizations. She asserts that through his training, Inglis has become accustomed to "loud noises
23  and agitating behavior," and he has been in situations where there are "loud, unstable people." Decl.
24  Tamara 4, Dkt. No. 47. Inglis is trained to remain calm and obey Tamara, ignoring distractions. *Id.*
25  She further asserts that Inglis' harness, given its extensive buckles, would be difficult to remove and
26  use as a weapon.[3] *Id.* She also provides a layout, from her memory, of the psychiatric ward,

---

[3] The Hospital's assertion that Inglis poses a direct threat because a patient could use his harness and leash as a weapon seems disingenuous. The walker El Camino gave Tamara as a replacement could also be used as a weapon. If an unstable patient were looking for a weapon in the psychiatric ward,

ORDER GRANTING PI
Case No. C-12-01032-RMW
SW/JU
- 10 -

asserting that there is a separate locked section for the patients in need of truly intensive care. *Id.* at 7. These patients apparently do not interact with the others or participate in the milieu community treatment, and thus would not interact with Inglis. Tamara further asserts that the Hospital could have considered reasonable accommodations to allow her to care for her dog's hygiene needs: allowing her, with supervision, out of the locked ward to take Inglis into the hospital's outside area, or allowing a third party to take Inglis from Tamara at the door of the ward and do the same.[4] Failure to consider these alternatives was a failure to comply with the ADA's requirement that the public accommodations consider changes in practices or policies that would mitigate any direct threat. Finally, Tamara asserts that El Camino arbitrarily and discriminatorily excluded Inglis because the ward's occupational therapist frequently brings a dog into the ward without incident. *Id.* at 2.

### 3. Tamara is likely to succeed on the merits

Therefore, the court finds that Tamara is likely to succeed on the merits. She has clearly provided that (1) she is disabled; (2) El Camino is a place of public accommodation; and, (3) El Camino likely discriminated against her. Accommodating at least some service dogs some of the time in the psychiatric ward would not appear to require El Camino to fundamentally alter its services. Moreover, El Camino deprived her of her service animal without an individualized assessment in violation of the ADA.

### B. Irreparable Harm

A plaintiff seeking a preliminary injunction must demonstrate that she is likely to suffer irreparable harm. Although "speculative injury" is not sufficient because "a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief," *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original), the injury does not have to be certain to occur. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Tamara asserts that illegal and discriminatory deprivation of her service dog is *per se* irreparable harm. El Camino asserts that Tamara's harm is too remote to justify a

---

it would be far easier to take a walker from a mobility-impaired woman than to unlatch a harness from a trained service dog.
[4] Indeed, Tamara asserts that she has friends who have volunteered to do this.

preliminary injunction because Tamara will not be harmed *unless* she goes to El Camino Hospital's psychiatric unit, which will not happen unless she is a threat to herself or others.

Tamara alleges that she is facing a relapse of her bipolar disorder as well as her physical infirmities, and that she is struggling to manage her situation with outpatient treatment. Based on these allegations, which defendants do not dispute, her hospitalization seems likely. In 2011, Tamara was placed in the psychiatric unit for apparently physiological, not psychiatric reasons. El Camino provides no reason this could not happen again. Thus, Tamara's hospitalization, whether for physical or psychological reasons, appears probable. And, based on El Camino's current policy, she will be deprived of Inglis if she is placed in the psychiatric ward.

Discriminatory deprivation of a service animal is irreparable harm. *See Chalk v. U.S. Dist. Court Cent. Dist. Of California*, 840 F.2d 701, 709 (9th Cir. 1988) (discussing the "psychological and physiological distress" that disability discrimination causes as a substantial and irreparable injury); *see also Sullivan By and Through Sullivan v. Vallejo City Unified School Dist.*, 731 F. Supp. 947, 961 (E.D. Cal. 1990) ("[E]ach day she is forced to be separated from her service dog . . . his usefulness to her is diminished. As a consequence of defendants' conduct, plaintiff's ability to function as an independent person . . . is injured daily."). Every day Tamara is away from Inglis, she is not only deprived of her independence, but she loses time training and bonding with Inglis, resulting in less future independence. To be dependent on others to perform simple physical tasks is both frustrating and painful. El Camino's refusal to admit Inglis into the psychiatric ward, without substantial evidence of a direct threat to health or safety, is an imminent, irreparable harm.

### C. Balance of Hardships and Public Interest

The final two considerations, the balance of hardships and the public interest, can be considered together. *Cota v. Maxwell-Jolly*, 866 F. Supp. 3d 980, 989 (N.D. Cal. 2010). The court must "balance the interests of all parties and weigh the damage to each." *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). In conjunction, the court must also consider "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Independent Living Center of Southern*

ORDER GRANTING PI
Case No. C-12-01032-RMW
SW/JU

- 12 -

*California, Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009) (vacated in part, on other grounds).  The court finds that both of these factors favor Tamara.

Tamara and others similarly situated faces a great harm to their overall independence, equality, and dignity.  In comparison, El Camino appears to face only an administrative inconvenience mandated by law.  The balance of hardships clearly favors Tamara.

Similarly, the public has a strong interest in promoting the equality of all persons. *Concerned Parents to Save Dreher Park Center v. City of West Palm Beach*, 846 F. Supp. 986, 993 (S.D. Fla. 1994).  Tamara's request that the hospital admit service dogs unless it conducts an individualized assessment finding substantive evidence that her dog is a direct threat to the health and safety of the operation that cannot be mitigated by reasonably altering policy is merely requesting compliance with the ADA.

Understandably, as defendants argue, the public interest would tip in defendants' favor if Tamara were requesting an injunction demanding her service dog be admitted, regardless of the circumstances.  However, Tamara asks only that El Camino make an individual assessment as the ADA requires, rather than a blanket prohibition.  As such, the court finds that the public interest is in Tamara's favor.

### III. ORDER

For the foregoing reasons, plaintiff's motion for a preliminary injunction is GRANTED. Pending resolution of this case, El Camino is precluded from automatically excluding service animals from its Behavior Health Units.  Instead, El Camino must conduct individualized assessments in accordance with the ADA and the Code of Federal Regulations to determine whether a specific service animal poses a direct threat to the health or safety of others based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.

Nothing in this order should be construed as necessarily saying that Tamara's service dog must be allowed in the psychiatric ward.  It requires, however, that an individualized assessment be

made in accordance with the ADA and the Code of Federal Regulations to determine whether her service animal can be safely allowed in the psychiatric ward.

In light of plaintiff's apparent financial situation, the court finds that a nominal bond under Rule 65 is appropriate. Therefore, Tamara is ordered to post a $50 bond.

Dated: August 2, 2013



RONALD M. WHYTE
United States District Judge